Jennifer Joann CUNNINGHAM,
Plaintiff,

v.

H.A.S., INC., et al., Defendants.

No. Civ.A. 98–C–954–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 13, 1999.

Joseph (Jay) Brady Lewis, Terry R. Smyly, Law Offices of Jay Lewis, Montgomery, AL, George L. Beck, Jr., Beck & Byrne, P.C., Montgomery, AL, W. Terry Travis, for Plaintiff.

Paul M. James, Jr., Rushton, Stakely, Johnston & Garrett, Montgomery, AL,

Eric Allison Bowen, Montgomery, AL, Clement C. Torbert, Jr., Maynard, Cooper & Gale, P.C., Montgomery, AL, Jarred O. Taylor, II, J. Alan Truitt, Maynard, Cooper & Gale, P.C., Birmingham, AL, Steadman Shealy, Jr., Cobb & Shealy, P.A., Dothan, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

CARROLL, Chief United States Magistrate Judge.

## I. INTRODUCTION AND PROCEDURAL HISTORY

This is a federal Truth in Lending Act ("TILA") case with pendent state law claims for wanton misrepresentation and concealment against defendants H.A.S. Inc., d/b/a/ Budget Car Sales ("Budget"), and Ron Smalls and Bob Letourneau, who were employees of Budget, in connection with the sale and financing of a used car.[1] The plaintiff, Jennifer Joann Cunningham, originally filed this action in the Circuit Court of Montgomery County, Alabama, and served Budget on July 14, 1995. On July 28, 1998, Cunningham amended her state court complaint to add a federal TILA claim. The case was then removed to this court on August 26, 1998. The case is currently pending on a motion for summary judgment filed by the defendants on February 2, 1999. Cunningham has filed two responses to the motion, one on February 19, 1999 and one on August 23, 1999. For the reasons which follow, the court concludes that the motion is due to be granted in part and denied in part.

## II. FACTUAL BACKGROUND[2]

Cunningham was 36 years old at the time of the purchase which led to this lawsuit. She was single and had an 11 year old child. She was a high school graduate with some trade schooling. She had served three years in the United States Army and had been honorably discharged after reaching the rank of specialist four.

On the morning of Tuesday, November 1, 1994, Cunningham went to Budget at approximately 9:00 A.M.[3] She was accompanied by a friend named Eddie Jackson. Cunningham met a salesman named Ron Jaworski who asked her what kind of car she was interested in, what price range she was looking for, and what monthly payments she could afford. Cunningham told Jaworski that she was looking for an automatic, possibly a four-door, with payments of no more than $275.00. She took a test drive in a Nissan Sentra with Jaworski and Jackson. When they got back, Jaworski started the paperwork process.

Jaworski presented Cunningham with an "okay deal" sheet which she signed. Pursuant to the "okay deal" sheet, Budget agreed to sell the Nissan Sentra to Cunningham and Cunningham agreed to buy the Nissan Sentra for $14,344.00 plus $298.00 for a Goldseal paint protectant package and $199.00 for dealer preparation. Budget agreed to provide her with $1,200.00 for her trade-in. This "okay deal" was further memorialized by Budget in another document titled "Budget Car Sales." This document totaled the agreed sale price of the car, the Goldseal paint protectant package, and the dealer preparation for a total purchase price of the car before tax, title, and documentary fees of $14,841.00. At Jaworski's request, Cunningham completed a credit application, after which Jaworski took the papers to the finance office.

---

1. The state law claims are raised in Count I and the TILA claims are raised in Count II.

2. The facts as stated here and elsewhere in this opinion are stated in a light most favorable to Cunningham. *Hale v. Tallapoosa County,* 50 F.3d 1579, 1581 (11th Cir.1995).

3. Before going to Budget, Cunningham had owned three cars, a 1972 Opal which she purchased in 1986 at Low Cost Cars on Mt. Meigs Road, a 1978 Monte Carlo which she purchased in 1988 at Country Auto Sales, and a 1981 Honda Accord which she purchased in 1989 at Catoma Street Motors.

Cunningham then met with the secondary finance manager, Ron Smalls. Smalls handled the financing for people with credit problems. Smalls was involved in Cunningham's purchase because the finance manager, Bob Letourneau, had run a credit report on Cunningham which indicated past credit problems. Smalls presented Cunningham with another credit application which she signed. This second credit application showed a purchase price, including tax, title, and registration fees, of $15,532.00, a down payment of $400.00, a net trade-in of $1,200.00, an unpaid balance of $13,752.00, and a loan term of 66 months. Following her conversations with Smalls, Cunningham was under the impression that her payments would be no higher than $326.00 per month. The first meeting with Smalls, which began at about 10:30 A.M., lasted approximately 15 minutes. During the meeting, Cunningham signed a series of other documents, including a cross country motor club enrollment certificate. When Smalls was finished with Cunningham, he took the paperwork to Bob Letourneau. Smalls asked Cunningham to wait in the lobby.

While she was waiting to see Letourneau, Cunningham met with an independent insurance agent and purchased liability, comprehensive, and collision coverage on the Nissan Sentra. The insurance application completed by the agent for said coverage initially listed Barnett Bank as the lender. The insurance application was signed by Cunningham at 11:30 A.M. She specifically rejected uninsured motorist coverage. While Cunningham continued to wait to see Letourneau, Jaworski returned and told Cunningham that Budget had additional warranties and insurance that she could purchase. Cunningham told him that she did not want anything other than what she had already purchased. Letourneau then came out and took Cunningham and Jackson into his office and started asking Cunningham about a Ford. Cunningham told Letourneau that she was trading a Honda, not a Ford. Letourneau also asked Cunningham

about credit cards which she did not have. He then told Cunningham that he thought he had lost the deal.

By this time, it was approximately 2:30 P.M. and Jackson had to go to work. Letourneau told Cunningham to take Jackson to work, and he would see what he could do. Cunningham drove Jackson to work in the Nissan Sentra because Budget retained the keys to the car that she had driven to the lot. Cunningham returned to Budget alone.

Upon her return, Cunningham again met with Smalls. At this point, Smalls discussed a series of different monthly payments. The first was over $600.00, another was over $500.00, and the last one was $416.00. Smalls told her that the payments would have to be $416.00 because the bank could not offer her a 66 month loan. Smalls never discussed the purchase of credit life insurance, accident and health insurance, or an extended warranty coverage with Cunningham even though these amounts were included in the $416.00 monthly payment. This second meeting with Smalls lasted less than 10 minutes. After Cunningham saw Smalls this second time, she went into Letourneau's office to sign the closing documents. According to Cunningham, Letourneau was standing up with a stack of documents and just told her "sign here, here, and here." Also, according to Cunningham, Letourneau covered up the World Omni Installment contract which contained the full disclosures about what she was paying for so that she never saw the disclosures. At the point in time that she signed the documents, Cunningham had been on the Budget lot for over eight hours. According to Cunningham, the only document that Letourneau discussed with her was the Budget Retail Sales Contract which showed a total cash delivery price of $15,318.61.

When Cunningham finished signing the closing documents, Letourneau gave her a copy of the Budget Retail Sales Contract and the World Omni Installment Contract in an envelope and she left with the Nissan

Sentra. The next day, Cunningham returned to Budget and talked to Smalls about the amount of the payments. Smalls told her that it was too late to work anything out because the bank already had the paperwork.

## III. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element to her claims, and on which she bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir.1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also DeLong Equipment Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir.1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung,* 695 F.2d 1294,1296 (11th Cir.1983); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### B. THE STATE LAW WANTON FRAUD CLAIMS

Cunningham's fraud claim pleads both misrepresentation and suppression.[4] Consequently, each cause of action will be discussed in turn.

#### 1. MISREPRESENTATION[5]

■ Cunningham contends that Budget committed fraud by misrepresentation when Smalls told her that Barnett Bank

---

4. Cunningham pleads both misrepresentation and suppression in the same count. She also labels the tort "wanton misrepresentation and concealment" which is not a tort identified in the opinions of the Alabama appellate courts. Neither side has discussed the issue of whether there is a difference between wanton misrepresentation and concealment and fraudulent misrepresentation and concealment.

Consequently, the court will analyze the summary judgment motion utilizing the elements of fraudulent misrepresentation and concealment since those are the terms utilized under Alabama law.

5. Cunningham's fourth amended complaint alleges only one act of misrepresentation. Cunningham's supplemental response filed on

would not finance her car for 66 months. The payment option offered to Cunningham required a monthly payment of $416.00. Cunningham testified that she had been seeking a payment of approximately $275.00. Cunningham asked Smalls why her payments were so high. He replied that the payments were so high because the bank would not finance the car for 66 months.[6]

The elements of fraudulent misrepresentation are well settled: (1) a false representation; (2) of a material fact; (3) that is justifiably relied upon; and (4) damage proximately caused by the plaintiff's reliance. *Armstrong v. Flowers Hosp., Inc.*, 812 F.Supp. 1183 (M.D.Ala.1993); *Spring Hill Lighting & Supply Co., Inc. v. Square D Co., Inc.*, 662 So.2d 1141 (Ala.1995). Cunningham has produced sufficient evidence to avoid summary judgment on this claim. The representation made by Smalls, viewed in a light most favorable to Cunningham, was false and material. Cunningham has presented some evidence which would establish, by inference, that Barnett Bank would have financed the automobile which she purchased for a period

of 66 months.[7] This long term financing was important to her because she sought the lowest monthly payment possible. Had Cunningham known that Barnett Bank would have financed her car for 66 months, it is clear that she would not have financed with World Omni for a period of 60 months.

Cunningham has also presented sufficient evidence to show that she justifiably relied on the misrepresentation. Justifiable reliance is to be measured by the following standard:

A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not *justifiably relied* on defendant's representation if that representation is "one so patently and obviously false that he must have closed his eyes to avoid discovery of the truth."

*Hickox v. Stover*, 551 So.2d 259, 263 (Ala. 1989) (emphasis added) (*quoting Southern States Ford, Inc. v. Proctor*, 541 So.2d 1081, 1091–92 (Ala.1989), *overruled Foremost Ins. Co. v. Parham*, 693 So.2d 409 (Ala.1997)).[8] As noted above, Cunningham

August 23, 1999 contains two additional allegations. The court will not discuss the additional allegations because they have not been the subject of an amended complaint and, consequently, are not properly before the court.

6. Cunningham also complains that part of the misrepresentation was a failure to disclose that another reason that the payments were so high was because the amount financed included amounts for an extended warranty and credit life and disability insurance. The failure to tell the whole truth or to give a partially correct answer may be a fraudulent concealment but not a misrepresentation. *See Gold Kist, Inc. v. Brown*, 495 So.2d 540, 544 (Ala.1986). Cunningham has not pled Small's incomplete response as a fraudulent concealment.

7. The evidence about whether Barnett Bank actually offered to finance Cunningham's automobile for 66 months is sparse and in conflict. The Fair Credit Reporting Act disclosure provided to Cunningham by Barnett Bank (Pl.'s Ex. 23) shows, at least by inference, that Barnett would have financed $13,-000.00 for 66 months but would not have

financed $13,752.00 for 66 months. The "call back sheet" (Defs.' Ex. D to the Supp. Br. filed on 7/27/99), which concerns financing shows an "850" number which indicates that Barnett would finance $13,500.00 for 66 months only if there was an $850.00 deposit. There is no testimony which explains either the Fair Credit Reporting Act claim or the "call back sheet."

8. The Alabama Supreme Court in *Foremost* changed the standard of reliance to "reasonable reliance." Under the reasonable reliance standard, a person's reliance must be reasonable under the circumstances and, where a person has reason to doubt the truth of the representation or is informed of the truth before he acts, he has no right to rely on the misrepresentation. *Foremost*, 693 So.2d at 418. The fact that Cunningham was provided with written documents which negated the material misrepresentation is a fact which is important in a reasonable reliance analysis. However, the reasonable reliance standard applies only to cases filed after March 14, 1997. *Id.* at 421. This case was filed in 1995, thus, "justifiable reliance" is the appropriate standard.

accepted Smalls' representation and accepted financing with World Omni. Smalls' representation about Barnett Bank was not so patently false that Cunningham should have known it was not true. Had she known that she could have financed her car with Barnett Bank for 66 months, she would have exercised that option because it would have meant lower monthly payments for her.

■ Cunningham also has been damaged by fraud because she has presented evidence that the misrepresentation caused her to enter into a transaction which she could not afford, caused her to pay more than she should have for an automobile, and caused her to suffer mental anguish and embarrassment. The defendants' motion with regard to the fraudulent misrepresentation claim is due to be denied.

### 2. SUPPRESSION

Cunningham also claims that she is the victim of fraudulent suppression. Specifically, Cunningham claims that the defendants fraudulently suppressed the following facts:

(a) Barnett Bank would loan Cunningham $13,000.00 for 66 months;

(b) Budget had included credit life and disability insurance and an extended warranty as part of the deal even though Cunningham had rejected these products;

(c) The credit life and disability insurance cost Cunningham an additional $1,930.36;

(d) The extended warranty cost Cunningham an additional $1,400.00.;

(e) The total cost was $27,695.41, not $15,915.36; and

(f) Cunningham was charged $298.00 for a paint warranty she did not receive.[9]

9. There will be no extended discussion of the claim involving the paint warranty because Cunningham has failed to present any evidence that there was concealment or suppression with regard to the paint warranty. The evidence suggests the possibility of a promis-

■ In order to prevail on a claim for fraudulent suppression, Cunningham must prove: (1) that the defendants concealed or failed to disclose material facts; (2) that the defendants were under a duty to disclose said material facts; (3) that Cunningham was induced to act by the defendants' concealment or nondisclosure; and (4) that Cunningham acted to her injury. *Ex parte Ford Motor Credit Co.*, 717 So.2d 781, 785–86 (Ala.1997). The court will now proceed to determine whether Cunningham has provided sufficient evidence on each of these elements to avoid summary judgment.

### a. Duty

■ The existence of a duty to disclose is a question of law to be determined by the trial judge and not a question of fact for the jury. *State Farm Fire & Casualty Co. v. Owen*, 729 So.2d 834 (Ala. 1998) (opinion modified on denial of rehearing). In deciding whether Budget had a duty to disclose under the analysis set forth by the Alabama Supreme Court in *State Farm*, a court should consider a number of factors: (1) the relationship among the parties; (2) the relative knowledge of the parties; (3) the value of a particular fact; (4) the customs of the trade; and (5) other relevant circumstances. *Id.* at 842–43. The allegations of Cunningham are simple. She alleges that Budget failed to tell her the amount she was required to finance in order to purchase her car and that the amount financed included amounts for credit life and disability insurance and an extended warranty which she did not want. She also alleges that Budget failed to tell her that there was better financing available, i.e., a 66 month loan with Barnett Bank.

sory fraud claim but not a claim of concealment or suppression. *See, e.g., Pinyan v. Community Bank*, 644 So.2d 919, 923 (Ala. 1994) (discussing the elements of promissory fraud). Cunningham has not pled a promissory fraud claim.

### (i) Duty to Disclose the Amount Financed and the Elements of the Amount Financed

■ The analysis required by *State Farm* compels the conclusion that the defendants had a duty to disclose the amount financed and the elements of the amount financed. Cunningham is a high school graduate who served three years in the United States Army. She has had previous experience in buying cars. However, her previous car purchases were directly from a used car lot with payments directly to the seller. None of her previous purchases involved either credit or disability insurance or the purchase of an extended warranty. Thus, Cunningham had no purchasing experience similar to her experience with Budget. Further, the amount financed and elements of the amount financed are critical pieces of information which every consumer must have in order to make an intelligent decision about an automobile purchase. This vital information is also information which, according to the evidence before the court, is routinely disclosed to every automobile purchaser.[10] In addition, disclosure of the amount financed and the elements of the amount financed is required by federal law. *See* 15 U.S.C. § 1601 *et seq.* There can be no question that, under Alabama law, an automobile dealer has a duty to disclose to a consumer the amount financed and that the amount financed includes amounts for insurance and an extended warranty.

### (ii) Duty to Disclose Alternative Financing

Cunningham also contends that Budget has a duty to disclose to her the fact that Barnett Bank indicated that they would offer her a loan of $13,000.00 for 66 months. As noted previously, the evidence relating to this claim is sparse on both sides and in conflict. Because the court, in ruling on a summary judgment motion, must resolve the conflicts in favor of Cun-

ningham, the court assumes that Budget could have offered Cunningham a loan from Barnett Bank for $13,000.00 for 66 months and suppressed that fact. The important question is whether Budget had a duty to inform Cunningham that it could have obtained more favorable financing for her.

■ In this situation, the analysis mandated by *State Farm* compels the conclusion that there is no duty to disclose. As noted above, Cunningham is a high school graduate with three years in the Army. Unlike the situation discussed above, where the disclosure relates to the terms of the financing arrangement, this claim addresses the efforts of Budget to obtain financing. As the Supreme Court noted in *Ex Parte Ford Motor Credit Co.*, 717 So.2d 781 (Ala.1997), in the absence of a special confidential relationship, the general creditor-debtor relationship does not impose a fiduciary duty requiring such disclosure. *Id.* at 787. Cunningham has presented no case and the court has found none which suggests that an automobile dealer is required to tell Cunningham the details of its attempts to obtain financing. In this case, Budget was not under a duty to inform Cunningham that Barnett Bank would finance $13,000.00 for 66 months. Thus, the defendant is entitled to summary judgment on the suppression claim concerning the Barnett Bank financing.

Having concluded that there was a duty to disclose to Cunningham the amount financed and that the amount financed included amounts for insurance and an extended warranty, the court must now decide whether she has presented sufficient evidence on the other elements of her first suppression claim to avoid summary judgment.

### b. Suppression or Concealment of a Material Fact

■ There is no question that Cunningham signed the World Omni Installment Contract, which clearly listed the amount

---

**10.** Indeed, in this case, Budget indicates that it made the necessary disclosures to Cunningham. Cunningham disputes that the disclo-

sures were actually made. Therefore, a genuine issue of material fact exits which prevents summary judgment on this claim.

financed and that the amount financed included $1,930.36 for life and disability insurance and $1,400.00 for an extended warranty. There is also no question that Cunningham did not read the document before she signed it. Under most circumstances, that would end the inquiry because, under well-settled law, there can be no suppression if the information allegedly suppressed is provided in a form signed by the party complaining about the suppression. *See Locklear Dodge City, Inc. v. Kimbrell,* 703 So.2d 303 (Ala.1997); *Robinson v. JMIC Life Ins. Co.,* 697 So.2d 461 (Ala.1997); *Williams v. Norwest Fin. Ala. Inc.,* 723 So.2d 97 (Ala.Civ.App.1998).

█ The facts of this case, however, as presented by Cunningham, remove it from the holdings of those cases. In this case, Cunningham has presented evidence that she was on the car lot for some eight hours with only two breaks while she tried to negotiate the purchase of a car, that she was shuffled from person to person on at least eight occasions, that Budget retained the key to her personal car and only allowed her to drive the car that she was contemplating purchasing, and that she was confused and tired when she signed the documents which disclosed the true facts. Cunningham has also presented evidence that Letourneau, Budget's sales manager, covered up the disclosure items and ordered her to sign the papers.[11] In the words of her affidavit:

> When I finally got in to see Bob Letourneau again, I was very tired and confused. I was in his office only a few

minutes and I stood the whole time and just signed the papers where he told me to sign. He kept all the papers in a stack. He had the Budget Retail Sales Purchase Contract on top and he used it to cover up the other documents. He just flipped the pages up so that I could see the lines where he told me to sign but nothing above the lines.[12]

Cunningham has also presented evidence that her treatment was not an isolated instance, but was part of an intentional scheme to prevent her from knowing the true facts about the costs associated with her purchase. The scheme, according to affidavits provided by former employees at Budget, targeted primarily low income people, was designed to create confusion about the actual terms of the car deal, involved keeping people on the lot for as long as possible, making it hard for them to leave, and involved the intentional covering up of the terms of documents.[13]

█ The defendants deny that the pattern, which Cunningham alleges, exists. At this point in time, however, the court may not resolve the factual dispute because Cunningham has provided evidence of a systematic pattern designed to suppress the true facts of the automobile transaction. Given that evidence, the fact that Cunningham signed the document which contains the disclosures does not entitle the defendants to summary judgment. This is not a case, according to Cunningham's evidence, where the consumer simply chose not to read the disclosure documents. Cunningham has pre-

11. Budget complains that Cunningham's affidavit should not be considered because of the variance between her affidavit and her deposition. As Budget correctly notes, when a party has given clear answers to unambiguous questions which negate the existence of a material fact, that party cannot thereafter create such testimony with an affidavit which merely contradicts, without explanation, previously given clear testimony. *Van T. Junkins and Associates, Inc. v. United States Industries, Inc.,* 736 F.2d 656, 657 (11th Cir.1984). In this case, Cunningham's deposition testimony does not contradict her affidavit. During the deposition, Cunningham admitted that she had not read the disclosure documents

but indicated that there were other documents on top of the disclosure documents.

12. Pl.'s Aff. at ¶ 12. (The affidavit is Exhibit 29 of Cunningham's evidentiary submission filed in opposition to the defendants' motion for summary judgment on February 19, 1999.)

13. The affidavits appear as exhibits to Cunningham's opposition to the motion for summary judgment filed on September 19, 1999, affidavit of Sandy Trammell (Exhibit 30), affidavit of Alvin Perdum (Exhibit 31); affidavit of Terrance Harris (Exhibit 32).

sented sufficient evidence that Budget did not make the disclosures concerning the amount financed which they were under a duty to make and that the information they failed to disclose was material.

### c. Inducement and Injury

Cunningham has testified that she would not have purchased the car from Budget had she known the true terms of her deal and, that as a result of purchasing the car from Budget, she had financial problems and suffered mental anguish or embarrassment. That evidence is sufficient to establish the inducement and injury elements of Cunningham's claim. Therefore, the defendants' motion for summary judgment is due to be denied on said claim.

### C. THE TILA CLAIMS[14]

Cunningham also contends that Budget's activities have violated TILA. 15 U.S.C. § 1601 *et seq* and Regulation Zz, 12 C.F.R. § 226. TILA is designed to assure credit customers meaningful disclosure of credit terms, thus enabling them to avoid the uniformed use of credit. *Mourning v. Family Publications Serv. Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). Specifically, Cunningham contends that Budget violated TILA:

(1) by concealing from her the disclosures required by TILA by covering them up with the Budget Retail Purchase Contract;[15]

(2) by stating in the disclosures that $1,400.00 was paid to Fidelity Warranty for an extended warranty when in reality $1,150.00 of the $1,400.00 was retained by Budget Car Sales;[16]

(3) by stating in the disclosures that $89.50 was paid for a certificate of title or other charges when in reality it was retained by Budget as profit;[17]

(4) by charging her for an extended warranty as an incident to the extension of credit without including the amount of the extended warranty in the "finance charge" disclosure;[18] and

(5) by charging Cunningham an undisclosed finance charge equal to the difference between what Budget would have likely charged a cash customer for an extended warranty on the car Cunningham purchased and what Budget charged her.[19]

Before the court proceeds to decide whether Cunningham's allegations of TILA violations survive summary judgment, the court will first address the defendants' statute of limitations defense.

The defendants seek dismissal on the ground that the TILA claims are time barred because they were not added to the complaint until July 1998. The transaction which gave rise to this lawsuit occurred on November 1, 1994. The statute of limitations for TILA claims is one year. 15 U.S.C. § 1640(e). The complaint in this case was filed in state court in the summer of 1995, but as the defendants correctly note, the TILA claims were not added until July 1998, some three years after the statute of limitations would have expired. The defendants' argument, however, ignores the relation back rule of Rule 15(c)(2) Ala.R.Civ.P., which states in pertinent part that an amendment of a pleading relates back to the date of the original pleading if the claim asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading. There can be no doubt that the TILA claim arises out of the same transaction which was attacked

---

14. The TILA claims as discussed in this section are the claims which Cunningham has listed in her fourth amended complaint. In the supplemental brief filed on August 23, 1999, she attempts to recast her TILA claim. She has not attempted to amend her complaint, so the court will not discuss the recast version of the TILA claim.

15. ¶¶ 68(a) and (b) of Cunningham's Fourth Amended Complaint.

16. *Id.* at ¶ 68(c).

17. *Id.* at ¶ 68(d).

18. *Id.* at ¶ 68(e).

19. *Id.* at ¶ 68(f).

in Cunningham's original complaint. The amendment which adds the TILA claims thus relates back to the original filing date and there is no violation of the statute of limitations. *See Money v. Willings Detroit Diesel, Inc.,* 551 So.2d 926, 928–929 (Ala.1989).[20]

### 1. FAILURE TO MAKE REQUIRED DISCLOSURES

■ The provisions of 15 U.S.C. § 1638(a) set forth the financial disclosures which TILA requires. Cunningham does not argue that the disclosures were not made in writing. Rather, she argues that the written disclosures were covered up by the sales manager as part of a scheme of non-disclosure. As noted in the section discussing her fraud by suppression claim, Cunningham has presented sufficient evidence of a scheme aimed at non-disclosure to avoid summary judgment. That decision applies a fortiori to the TILA claim. TILA requires that the disclosures be made "clearly and conspicuously and in writing in a form that the consumer may keep." 12 C.F.R. § 226.5(a). If Cunningham's evidence is to be believed, the disclosures were not made "clearly and conspicuously" and TILA was violated. Therefore, the defendants' motion for summary judgment on this TILA claim is due to be denied.

### 2. FAILURE TO DISCLOSE THAT THE A SUBSTANTIAL PORTION OF THE COSTS OF THE EXTENDED WARRANTY WAS RETAINED BY BUDGET

The Retail Installment Contract prepared by Budget, under the heading "Oth-er Charges including Amounts Paid to Others on Your Behalf," includes a figure of $1,400.00 as the cost of an extended warranty. According to Cunningham's evidence, only a small portion of the extended warranty payment was going to the insurer. The rest was retained by Budget.[21]

■ This issue has been recently addressed by the United States Court of Appeals for the Seventh Circuit in its decision in *Gibson v. Bob Watson Chevrolet-Geo, Inc.,* 112 F.3d 283 (7th Cir.1997).[22] In that decision, which the court finds persuasive, the Seventh Circuit concluded that where, as here, the automobile dealer fails to disclose how much of the charge for an extended warranty is actually going to the insurance company to pay for the extended warranty, TILA is violated. The defendants' motion for summary judgment on this claim is due to be denied.

### 3. FAILURE TO DISCLOSE THAT THE GOVERNMENT CERTIFICATE OF TITLE FEE WAS RETAINED BY BUDGET

■ In the Retail Installment Contract in which Budget makes the disclosures required by TILA, Budget lists the sum of $89.50 as "Government Certificate of Title Fees." Cunningham has opposed the defendants' motion by filing the deposition of Nancy Shields which shows that the document fee charged Cunningham was not, as the disclosure suggests, a government certificate of title fee. Rather the figure represents many things including legal fees,

**20.** The court believes that it is appropriate to resolve this question based on Alabama procedural law since the amendment was filed in state court. However, it is important to note that the text of Rule 15(c)(2) of the Federal Rules of Civil Procedure is virtually identical and the result is the same whether the federal or state procedural rule applies. *See, e.g., Hill v. United States Postal Serv.,* 961 F.2d 153 (11th Cir.1992).

**21.** According to Cunningham's evidence, which the defendants do not dispute, Budget retained $1,150.00, which represents 82% of the money which Cunningham paid for an extended warranty.

**22.** The court notes that in a brief filed by counsel for the defendants on February 2, 1999, counsel cited the district court opinion in *Bob Watson Chevrolet-Geo, Inc.* as persuasive authority for its contention that disclosure was not required. The decision of the Seventh Circuit reversing the district court was issued over 20 months prior to counsel's citation to the district court opinion.

data processing, and income to Budget.[23] Under the recent decisions of both the Fifth and Seventh Circuits, and accepting Cunningham's evidence as true, this misrepresentation amounts to a TILA violation. *See Green v. Levis Motors,* 179 F.3d 286 (5th Cir.1999); *Bob Watson Chevrolet-Geo, Inc., supra.* Consequently, defendants' motion for summary judgment on this TILA claim is due to be denied.

### 4. FAILURE TO DISCLOSE THE EXTENDED WARRANTY CHARGE OR MARKUP AS A FINANCE CHARGE

■ Cunningham also complains that Budget has violated TILA because it failed to include the costs of the extended warranty as a finance charge. The evidence produced by Cunningham shows that cash customers pay less for their extended warranty than do persons who finance cars through Budget. Specifically, the evidence shows that the average markup on extended warranties sold to cash customers is approximately 100%, whereas the markup for extended warranties for non-cash customers is approximately 200%. The decision of the Seventh Circuit in *Bob Watson Chevrolet-Geo, Inc.* supports Cunningham's contention. There the court described the dealer's markup on the extended warranty as a hidden finance charge and, thus, incident to the extension of credit where the dealer's markup is systematically higher on sales to credit customers than on sales to cash customers.[24] *See also Berryhill v. Rich Plan of Pensacola,* 578 F.2d 1092, 1098 (5th Cir.1978);

*Carney v. Worthmore Furniture, Inc.,* 561 F.2d 1100 (4th Cir.1977).

■ Cunningham also argues that all of the amount of the extended warranty should be included as a finance charge because the purchase of an extended warranty is required before credit will be extended. Cunningham's submission is insufficient to avoid summary judgment on this aspect of the "extended warranty as an incident of credit claim." The documentary evidence noted above shows that the markup on extended warranties for credit customers is significantly greater than for cash customers. The undisputed evidence, however, is that a customer may purchase a car from Budget on credit or for cash without purchasing an extended warranty.[25] Consequently, the TILA violation is the failure to include the markup as a finance charge rather than the failure to disclose the entire amount of the extended warranty.[26] The defendants' motion is denied insofar as it relates to their failure to disclose the markup on the extended warranty as a finance charge and granted insofar as it relates to plaintiff's claim that the entire amount of the warranty should be disclosed as a finance charge.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the motion for summary judgment filed by the defendants be GRANTED in part and DENIED in part as follows:

---

**23.** Pl.'s Second Supp. Evidentiary Submission, Ex. 3 & 4.

**24.** TILA defines a finance charge as "the sum of all charges payable directly or indirectly by the person to whom the credit is extended and imposed directly or indirectly as an incident to the extension of credit." 15 U.S.C. § 1605(a).

**25.** *See* Deposition of Nancy Shields taken in *Young v. H.A.S.* at p. 65 (Pl.'s Evidentiary Submission in Opposition to the Motion for Summary Judgment, Ex. 43).

**26.** As the Seventh Circuit noted, however, there is no TILA violation if the dealer merely charges what the traffic will bear and there is no causal connection between the markup of the warranty and the extension of credit. *Bob Watson Chevrolet-Geo, Inc.,* 112 F.3d at 286. The question of whether the markup has a causal connection is a disputed fact and hence one which the jury must resolve. Viewing Cunningham's evidence and the inferences which flow from it in a light most favorable to her, there is a causal connection.

A. The motion is DENIED as to the following claims, which will be tried:

1. The state law claim of misrepresentation that Budget told Cunningham that Barnett Bank would not finance Cunningham's car for 66 months;

2. The state law claim of suppression/concealment that Budget failed to disclose the amount financed and that the amount financed included amounts for credit life and disability insurance and an extended warranty;

3. The TILA claim that Budget failed to disclose the amount financed and that the amount financed included amounts for credit life and disability insurance and an extended warranty;

4. The TILA claim that Budget failed to disclose that it retained a substantial portion of the costs of the extended warranty;

5. The TILA claim that Budget failed to disclose that it retained the government certificate of title fees; and

6. The TILA claim that Budget failed to disclose as a finance charge the amount of the mark-up on the extended warranty provided to credit customers.

B. The motion is GRANTED as to all other claims.