James F. **CANNON and Diane C. Cannon, Plaintiffs,**

v.

**METRO FORD, INC., Defendant.**

Nos. 02–61208–CIV–LENARD, 02–61208–CIV–SIMONTON.

United States District Court, S.D. Florida.

Dec. 23, 2002.

Robert William Murphy, Fort Lauderdale, FL, for plaintiffs.

Ronald Jack Marlowe, Stephens Lynn Klein Lacava Hoffman & Puya, Fort Lauderdale, FL, for defendant.

### *ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANT'S AMENDED MOTION TO DISMISS*

LENARD, District Judge.

**THIS CAUSE** is before the Court on the Amended Motion to Dismiss Complaint, filed October 30, 2002, by Defendant Metro Ford, Inc. (D.E.10.) Plaintiffs James and Diane Cannon filed a Response on November 18, 2002. Defendant filed a Reply on December 9, 2002. Having considered the Motion, the Response, the Reply and the record, the Court finds as follows.

### I. Introduction

This action arises out of the sale of a used pick-up truck by Defendant Metro Ford, Inc., an automobile dealership, to Plaintiffs James and Diane Cannon, a couple with a poor credit history. In sum, Plaintiffs allege that the Dealership falsely represented to Plaintiffs that they had been approved for a loan with Ford Motor Credit and induced them to sign a Retail Installment Sale Contract ("RISC") and make a $2,500 down payment, when in fact they had not been approved for financing. Plaintiffs further allege that Defendant concealed the true terms of the financing agreement, added a number of terms to the RISC and Buyer's Order without their consent or permission, and failed to provide them with final copies of numerous documents they signed at the time of purchase. Approximately one month after Plaintiffs signed the papers and drove the truck home, the Dealership repossessed the vehicle without notice or warning Plaintiffs. (Compl.¶ 66.)

On August 30, 2002, Plaintiff filed a seven-count Complaint, alleging the following causes of action against Defendant: (1) violation of the federal Truth in Lending Act ("TILA"), based on Defendant's non-disclosure or intentional concealment of the financing details; (2) violation of the Equal Credit Opportunity Act ("ECOA"), based on Defendant's failure to provide Plaintiffs proper written notification of the denial of their credit application; (3) damages under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), based on Defendant's "spot" or "yo-yo" financing practices, insurance packing, and fraud in the sale and financing of motor vehicles; (4) declaratory injunctive relief under the FDUTPA, on similar grounds; (5) violation of the Florida Motor Vehicle Retail Sales Finance Act ("FMVRSFA"), based on Defendant's failure to sign the RISC and failure to comply with TILA; (6) action for willful and reckless violation of the Fair Credit Reporting Act ("FCRA"), based on Defendant's repudiation of the RISC without providing proper notice; and (7) action for negligent violation of the FCRA, on similar grounds.

Defendant filed a Motion to Dismiss on October 11, 2002, and the instant Amended Motion to Dismiss on October 30, 2002. Plaintiffs filed their Response on November 18, 2002, and Defendant filed its Reply on December 9, 2002.

### II. Parties' Arguments

Defendant argue that Plaintiffs' Complaint should be dismissed for failure to state a claim on the following grounds. First, Plaintiffs' TILA claims cannot succeed because Plaintiffs acknowledge that they signed the RISC and received a copy after signing it, which shows that they had an opportunity to review the disclo-

sures. Alternatively, Defendant contends that the deal was not consummated when Plaintiffs signed the RISC, since the document states that the Dealer "accepts" the contract by signing it, and, therefore, TILA disclosures were not required until either Plaintiffs drove the vehicle or the Dealership signed the RISC. Second, Plaintiffs have not stated an ECOA claim because they have not alleged that they are members of a "protected class." Third, Plaintiffs have not pled valid FCRA claims because they have alleged neither that Defendant relied on a credit report nor that Defendant itself (as opposed to Ford Motor Credit) took an adverse action against them. With respect to the state law claims, Defendant contends that the Court should decline to exercise supplemental jurisdiction if and when it dismisses the federal claims. In addition, Defendant argues that Plaintiff's FDUTPA claims should be dismissed for failure to allege actual damages or for failure to allege that Plaintiffs demanded a return of their downpayment, a condition precedent to bringing such an action. Finally, with respect to the FMVRSFA claims, Defendant contends that it did not violate the TILA and it was not required to sign the RISC before Plaintiffs signed it, as the document indicated that the Dealership, by its signature, would "accept" the contract as signed by Plaintiffs.

In response, Plaintiffs maintain that all claims are pled adequately to survive the Amended Motion to Dismiss. First, Plaintiffs argue that the transaction was consummated when they signed the RISC, and that Defendant failed to "deliver" the disclosures before Plaintiffs signed the RISC, in that Defendant's finance manager retained physical control over the document before signing and intentionally covered the disclosures in what is known as a

"five-finger spread" or "five-finger push." In addition, Plaintiffs contend that the Dealership violated the TILA by failing to provide the cost of credit disclosures in the RISC without marking same as "estimates." With respect to the ECOA claims, Plaintiffs argue that the Dealership is a creditor and that, as they are not asserting a discrimination claim, they need not allege membership in a protected class. Similarly, Plaintiffs contend that the Dealership is a creditor for FCRA purposes or that, at a minimum, it used Plaintiffs' credit report in taking the adverse action of repossessing the vehicle. Plaintiffs also maintain that their state laws claims are viable, in that they have alleged actual damages arising out of Defendant's fraudulent and deceptive practices.

### III. Standard of Review—Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of a claim that fails to state a claim upon which relief can be granted. The Eleventh Circuit has clearly articulated the standard of review for a Rule 12(b)(6) motion to dismiss:

> "The standard of review for a motion to dismiss is the same for the appellate court as it is for the trial court." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). A motion to dismiss is only granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1387 (11th Cir.), *cert. denied,* 525 U.S. 1000, 119 S.Ct. 509, 142 L.Ed.2d

422 (1998). "On a motion to dismiss, the facts stated in appellant's complaint and all reasonable inferences therefrom are taken as true." *Stephens,* 901 F.2d at 1573.

## IV. Analysis

### A. Federal Claims

#### (1) Truth in Lending Act ("TILA")

▮▮ The TILA is designed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601; *Mourning v. Family Publ'ns Serv., Inc.,* 411 U.S. 356, 364–65, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). Courts interpreting the TILA defer to the regulations developed by the Federal Reserve Board under the broad authority granted to it by Congress under the Act. *See Mourning,* 411 U.S. at 369–71, 93 S.Ct. 1652; *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 568, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980); *Sage v. Freedom Mortgage Co.,* 704 F.2d 1519, 1521 (11th Cir.1983). The TILA, a consumer statute, "is remedial in nature and therefore must be construed liberally in order to best serve Congress' intent." *Ellis v. Gen. Motors Acceptance Corp.,* 160 F.3d 703, 707 (11th Cir.1998); *see also Carmichael v. Nissan Motor Acceptance Corp.,* 291 F.3d 1278, 1280 (11th Cir.2002).

▮ Pursuant to its grant of authority, the Federal Reserve Board adopted Regulation Z, 12 C.F.R. § 226.1 *et seq.* Both the Act and Regulation Z require that a creditor in a closed-end transaction make disclosures to the consumer of the following items: the identity of the creditor, the amount financed, the annual percentage rate, the total of payments, and the total sale price. 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18. The TILA requires that a creditor make the required disclosures "before the credit is extended." 15 U.S.C. § 1638(b). Regulation Z provides that "[t]he creditor shall make disclosures before consummation of the transaction." 12 C.F.R. § 226.17(b). "Consummation" is defined as the time "the consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). The determination of whether or when a party becomes "contractually obligated" is a question of state law. Official Staff Commentary § 226.2(a)(13). Regulation Z also provides that "[t]he creditor shall make the disclosures . . . clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1).

In the instant case, Plaintiffs allege the following facts in support of their TILA claim. Plaintiffs were at the Dealership for more than nine hours, during which time the Dealership represented that it was "working out of the financing details" for the transaction. (Compl.¶ 16.) The Dealership falsely represented that Plaintiffs had been approved for a loan by Ford Motor Credit, with the intent of inducing Plaintiffs to enter the RISC. (*Id.* ¶¶ 20–21.) The RISC was presented to Plaintiffs in the Dealership's finance office, along with numerous other documents, in a deliberate attempt to obscure and conceal the financing details from Plaintiffs. (*Id.* ¶ 24.) Plaintiffs allege that the Finance Manager intentionally covered with his hand that portion of the RISC providing an "itemization of amount financed" and "Federal Truth in Lending Disclosures" in a dealer practice commonly known as the "five finger spread" or "five finger push." (*Id.* ¶ 28.) Further, Plaintiffs allege that the Finance Manager retained physical control of the RISC so that Plaintiffs could not

review the document before signing it. (*Id.* ¶ 29.)

■ Defendant argues that the "five finger spread" does not provide a basis for TILA relief because the case law holds that a dealership complies with the TILA even if the customer is not provided his own copy of the installment contract until after his signature is affixed to the document. The cases cited by Defendant, however, were decided on summary judgment after development of a factual record and do not negate the possibility of TILA liability based on a dealer's intentional concealment of the contract terms. *See Peter v. Village Imports Co.,* 2001 WL 1640130 (D.Minn. Oct.9, 2001) (granting defendant's motion for summary judgment where plaintiff acknowledged that he was given an opportunity to review and actually reviewed the contract before signing it); *Spearman v. Tom Wood Pontiac–GMC, Inc.,* 2001 WL 1712506 (S.D.Ind. Dec.3, 2001) (reconsidering summary judgment and finding that disclosures in quadruplicate form contract were sufficient, where no evidence showed that plaintiff could not keep a copy of the contract); *Tripp v. Charlie Falk Auto,* 2001 WL 1105132 (E.D.Va. Aug.22, 2001)(granting dealership's motion for summary judgment where plaintiffs "were provided disclosures on the Credit Contract and had the opportunity to read the contract before signing"); *Diaz v. Joe Rizza Ford, Inc.,* 210 F.Supp.2d 959 (N.D.Ill.2001) (granting summary judgment for defendant where disclosures were made in triple-copy contract where there was "nothing to suggest that [plaintiff] could not have taken away all three copies or the top copy, or notes of the terms, without executing them, if she had so desired"). This Court concurs with the principle established in these cases,

i.e., that contemporaneous disclosure of the required terms in the credit contract may satisfy TILA when the evidence shows that the consumer was provided an opportunity to review the terms and/or was not prevented from reviewing the disclosures before signing the form.

■ In contrast, the facts alleged in the instant case appear most analogous to those established in a case not cited by either party, *Cunningham v. H.A.S., Inc.,* 74 F.Supp.2d 1157 (M.D.Ala.1999), where the court denied summary judgment for a dealer based on findings that the plaintiff had presented sufficient evidence of the dealer's intentional scheme, targeted at low-income customers, to create confusion about the actual facts of the vehicle purchase and associated financing costs. In *Cunningham,* the plaintiff presented evidence that she was tired and confused after being on the car lot for more than eight hours before signing the papers, that she was shuffled from person to person on at least eight occasions, that the dealer's representative stood up with a stack of documents and said, "sign here, here, and here" and covered up the installment contract which contained the full disclosures about what she was paying for so that she never saw the disclosures. *Id.* at 1164–66. In addition, she submitted affidavits from former employees that described how the dealership targeted low income people and intentionally covered up the terms of the deal. *Id.* at 1165. In the instant case, Plaintiffs have alleged that the Dealership's finance manager deliberately covered up the disclosures with his hand and retained physical control of the documents until after Plaintiff had signed them. Such allegations are sufficient to survive a motion to dismiss.

■ Additionally, the Court rejects Defendant's argument that the transaction

was not "consummated" until the dealer signed the contract or until Plaintiffs obtained physical possession of the truck. The RISC, which was drafted by the Dealership and presented to Plaintiffs, contains the following language:

> You, the Buyer (and Co–Buyer, if any) may buy the vehicle described below for cash or on credit. The cash price is shown below as "Cash Price." The credit price is shown below as "Total Sale Price." By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract.

The Court finds that this language, particularly the last sentences, makes clear that a buyer would become contractually obligated by signing the RISC; thus, execution by the buyer constitutes "consummation" of the contract for TILA purposes. *See* 12 C.F.R. § 226.2(a)(13); *Lozada v. Dale Baker Oldsmobile, Inc.,* 91 F.Supp.2d 1087, 1093 (W.D.Mich.2000) (finding a contract created under Michigan law when plaintiffs signed their retail installment contract, where the documents were drafted by the dealer and presented to plaintiffs and were not contingent upon plaintiffs' obtaining financing). Similar to the situation in *Lozada,* the RISC was not made contingent upon Plaintiffs' obtaining financing; indeed, the RISC indicates that the buyer agrees to the credit terms set forth in the RISC. Therefore, the TILA disclosures must have been made to Plaintiffs and reviewable by them before they signed the RISC. As Plaintiffs have alleged that such disclosures were not reviewable by them before signing, the Court concludes that the TILA claims are sufficient to survive a motion to dismiss.

**(2) Equal Credit Opportunity Act ("ECOA")**

 In Count II, Plaintiffs allege that Defendant failed to provide them with written notification or a statement of reasons for the denial of Plaintiffs' credit application. The ECOA requires a creditor to notify an applicant for credit of its action on the application, and if the action is adverse, the creditor must provide the applicant a statement of reasons in writing or provide written notification with disclosure of the applicant's right to a written statement of reasons. 15 U.S.C. § 1691(d). The ECOA allows an aggrieved applicant to bring a civil action against "any creditor who fails to comply with any requirement imposed under this subchapter." 15 U.S.C. § 1691e.

 The ECOA defines the term "creditor" as "any person who regularly extends, renews or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e). Here, Plaintiffs allege that "the Dealership regularly extends, renews or continues credit, arranges for the extension, renewal, or continuation of credit, or participates in the decision of whether or not to extend credit." (Compl.¶ 78.) Defendant contends that it is not a "creditor," as Plaintiffs have not alleged that Defendant, in the ordinary course of its business, participates in the decision of whether or not to extend credit, and that, in fact, the decision is left to credit sources such as Ford Motor Credit. (Def.'s Am. Mot. to Dismiss at 6–7.) Yet the RISC itself, drafted by Defendant, identifies Defendant Metro Ford, Inc. as the "Creditor." and the ECOA definition of "creditor" is not limited to participation in the decision to extend credit. Thus, the Court finds that Plaintiffs have sufficiently alleged that Defendant qualifies as a "creditor" to survive

a motion to dismiss on this issue. *See, e.g. Mungia v. Tony Rizza Oldsmobile, Inc.,* Case No. 01 C 460, 2002 WL 554504, at *1 (N.D.Ill. Apr.15, 2002) (listing cases involving dealers who regularly refer applicants to creditors and holding that such dealers are subject to the ECOA).

■ Assuming that Defendant is a "creditor" for ECOA purposes and that it denied credit to Plaintiffs in this case, Defendant argues that Plaintiffs must allege that they were members of a "protected class" in order to assert claims under the ECOA. This may be true when a plaintiff alleges discriminatory credit practices under 15 U.S.C. § 1691(a). The Court need not decide the issue here, however, because Plaintiffs appear to be alleging that Defendant violated the written notification requirements of 15 U.S.C. § 1691(d).[1] Subsection (d) requires a creditor to provide written notification to all credit applicants, regardless of whether the applicant is a member of a protected class. *See* 15 U.S.C. § 1691a(b) (defining "applicant" as "any person who applies to a creditor ...")； *Jochum v. Pico Cred. Corp. of Westbank, Inc.,* 730 F.2d 1041, 1043 n. 3 (5th Cir.1984); *Rayburn v. Car Cred. Ctr. Corp.,* 2000 WL 1508238, at *3 (N.D.Ill. Oct.10, 2000); *cf. Thompson v. Galles Chevrolet Co.,* 807 F.2d 163, 166 (10th Cir.1986) (citing *Sayers v. Gen. Motors Acceptance Corp.,* 522 F.Supp. 835 (W.D.Mo.1981)). Thus, the Court finds that Plaintiff need not allege membership in a protected class to state a claim for violation of the ECOA's written notification requirements, 15 U.S.C. § 1691(d), as implemented by 12 C.F.R. § 202.9(a)(2).

However, because Plaintiffs have not alleged violations of the appropriate statutory subsection, the Court will dismiss Count II and provide Plaintiffs leave to amend it properly.

### (3) Fair Credit Reporting Act ("FCRA")

The FCRA provides that "[i]f any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report," the person must provide notice of the adverse action to the consumer and provide certain information about the consumer reporting agency that furnished the report to the person. 15 U.S.C. § 1681m. Plaintiffs allege that the repudiation of the RISC constituted an adverse action and that the Dealership violated the FCRA by failing to provide Plaintiffs the required notice. (Compl.¶¶ 126–27.) Defendant argues that since it is not a lender and did not make any credit decision, it does not have any notification obligation under the FCRA. (Def.'s Am. Mot. to Dismiss at 9–10.) In response, Plaintiffs contend that Defendant is identified as the "creditor" in the RISC and is certainly a "user" of a consumer report, and that the repossession of the vehicle after the execution of the RISC and the downpayment constitutes an adverse action. (Pls.' Resp. at 18.)

■ The FCRA defines an "adverse action" to include "any action taken ... that is adverse to the interests of a consumer." 15 U.S.C. § 1681a(k). The Court agrees that repossession of the vehi-

---

1. Plaintiffs argue in their Response to the Motion to Dismiss that Defendant violated 15 U.S.C. § 1691(d). (Resp. at 15–18.) Count II of the Complaint does not reference subsection (d), but does allege violations of Regula-tion B, 12 C.F.R. § 202.9(a)(2), which implements the notification requirements of 15 U.S.C. § 1691(d). In addition, Count II refers repeatedly to "15 U.S.C. § 1691(1)", which apparently does not exist in the Code.

cle could constitute an "adverse action" under the FCRA. *See Castro v. Union Nissan, Inc.,* 2002 WL 1466810, at *4 (N.D.Ill. July 8, 2002). However, the Complaint does not allege that repossession constitutes the adverse action, nor does it allege that Defendant accessed and/or relied upon Plaintiffs' credit report in taking an adverse action. The Court therefore finds that the Complaint does not adequately allege a FCRA violation, and the FCRA claims will be dismissed with leave to amend.

### B. State Law Claims

#### (1) Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")

 Initially, Defendant argues that the FDUTPA claims should be dismissed for failure to allege a condition precedent, as Plaintiffs have not alleged that they demanded the return of their down payment. Yet Defendant has cited no authority for the position that such allegation is necessary, nor has the Court discovered any such authority. Lacking any basis for requiring that Plaintiffs demand the return of their downpayment before filing a FDUTPA action, the Court rejects this basis for dismissal. Additionally, the Court finds that the loss of a down payment qualifies as "actual damages" under the FDUTPA.

 The Court cannot determine from the Complaint, however, whether Plaintiffs may be able to state a FDUTPA claim under the facts of this case. First, the Federal Rules of Civil Procedure require that for claims of fraud, "the circumstances constituting fraud ... shall be stated with particularity." FED. R. CIV. P. 9(b). Paragraph 94 of the Complaint contains allegations of fraud but fails to plead with any particularity the circumstances constituting the purported fraud. The parties in their pleadings argue as to whether conduct such as "insurance packing" and "yield spread premiums" violate the FDUPTA, but Plaintiffs have not alleged such facts in support of their FDUPTA claims.[2] Therefore, the Court will dismiss the FDUTPA claims and grant Plaintiffs leave to amend, to bring these claims into conformity with the basic federal pleading requirements.

#### (2) Florida Motor Vehicle Retail Sales Finance Act ("FMVRSFA")

Plaintiffs allege that Defendant violated the FMVRSFA in two ways: (1) by failing to sign the RISC, as required by FLA. STAT. § 520.07(1)(a); and (2) by failing to comply with the TILA, as required by FLA. STAT. § 520.07(2). Defendant argues that a 2001 amendment to the FMVRSFA prevents Plaintiffs from recovering for any violation of section 520.07, and that there is no violation of the TILA.

 The FMVRSFA requires that a retail installment contract must be in writing, signed by both the buyer and the seller, and be completed as to all essential provisions prior to the signing of the con-

---

2. Plaintiffs respond to the Motion to Dismiss by pointing out a number of allegations throughout the Complaint that purportedly support their FDUTPA claims. (Pls.' Resp. at 19–22.) Complaints such as this, which incorporate by reference all previous allegations, are highly frowned upon, as federal courts should not be required to sift through a complaint to determine which allegations may support various claims. *See, e.g., Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 (11th Cir. 2002); *Byrne v. Nezhat,* 261 F.3d 1075, 1128–34 (11th Cir.2001).

tract by the buyer. FLA. STAT. § 520.07(1)(a). The statute's penalty provision allows a buyer to recover for any willful violation with respect to a retail installment contract. FLA. STAT. § 520.12(2). The statute was amended, effective June 8, 2001, to provide:

> Section 520.12(2) does not apply to any violation of the requirement in s. 520.07(1)(c) that the seller deliver or mail to the buyer a copy of the contract signed by the seller, if the seller delivered at the time the buyer signed the contract an exact copy of the contract that the buyer signed.

FLA. STAT. § 520.12(3) (amended by Laws 2001, c.2001–196, § 32, eff. June 8, 2001). The Court finds nothing in this amendment to preclude the possibility of a buyer's relief for violation of section 520.07(1)(a), as alleged by Plaintiffs in the Complaint.

Florida law provides that a contract that complies with the federal TILA shall be deemed to comply with the FMVRSFA, so long as it contains a separate written itemization of financing, as set forth in the statute. FLA. STAT. § 520.07(2). As explained above, the Court finds that Plaintiffs' TILA claims cannot be dismissed as a matter of law. Under Florida law, the burden of proving compliance with the TILA is on the party claiming compliance. FLA. STAT. § 520.07(2). Therefore, Defendant will have the burden of proving TILA compliance for the purposes of determining Plaintiffs' FMVRSFA claims.

## V. Conclusion

To summarize the Court's findings, the TILA and FMVRSFA claims will proceed as alleged. With respect to all other claims, it appears that Plaintiffs may be able to allege sufficient facts to merit relief, but the current Complaint is not pled clearly enough for the Court to make this determination. The Court will therefore dismiss the remaining claims but grant Plaintiffs leave to amend. Accordingly, it is

**ORDERED AND ADJUDGED** that:

1. Defendant's Amended Motion to Dismiss Complaint (D.E.10), filed October 30, 2002, is **GRANTED IN PART** and **DENIED IN PART,** consistent with this Order.

2. Plaintiffs shall have fifteen (15) days from the date of this Order to file an amended complaint in compliance with this Order.