Melodie A. CLINGAN, Plaintiff,

v.

CELTIC LIFE INSURANCE COMPA-
NY, Arvel Jordan, and the Eufau-
la Agency, et al. Defendants.

No. CIV.A.02–A–1047–N.

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 11, 2003.

Lynn W. Jinks, III, Christina D. Crow, Jinks Daniel Crown & Seaborn LLC, Union Springs, AL, L. Shane Seaborn, Penn & Seaborn LLC, Clayton, AL, for Melodie A. Clingan, plaintiff.

Robert S.W. Given, Harlan F. Winn, III, R. Frank Springfield, Burr & Forman LLP, Birmingham, AL, Courtney Reilly Potthoff, Joel P. Smith, Jr., Williams, Potthoff, Williams & Smith, LLC, Eufaula, AL, W.H. Brittain, II, Ball, Ball, Matthews & Novak, P.A., Montgomery, AL, for Celtic Life Insurance Company, Arvel Jordan, The Eufaula Agency, defendants.

### MEMORANDUM OPINION

ALBRITTON, Chief Judge.

#### Introduction

This cause is before the court on Plaintiff's Motion to Remand to State Court (Doc. # 4), filed on October 10, 2002. Plaintiff originally filed this civil action in the Circuit Court for Barbour County, Alabama, on January 14, 2002. Plaintiff brings several claims against the Defendants under Alabama state law. Plaintiff charges Celtic Life Insurance Company ("Celtic") with state law claims for breach of contract, bad faith refusal to pay a just claim, bad faith refusal to investigate a claim, negligence and/or wantoness, and negligent and/or wanton hiring, training, and/or supervision. Plaintiff charges Arvel Jordan ("Jordan") with state law claims for fraudulent misrepresentation, negligence and/or wantoness, and fraudulent suppression. Plaintiff charges The Eufaula Agency ("the Agency") with state law claims for negligence and/or wantoness and negligent and/or wanton hiring, training, and/or supervision. Plaintiff also names several fictitious parties as defendants, but the citizenship of those parties shall be disregarded in this court's review of Plaintiff's Motion to Remand to State Court.

Celtic removed this action to this court on September 11, 2002. As a basis for federal jurisdiction, Celtic asserted that diversity jurisdiction was present because: 1) Plaintiff was seeking more than $75,000, and 2) Jordan and the Agency were fraudulently joined. According to Celtic, once the Alabama citizenship of Jordan and the Agency is discarded, the remaining parties have diverse citizenship. Celtic is an Illinois corporation with its principal place of business in Illinois. Plaintiff is an Alabama citizen. The parties do not dispute the fact that the $75,000 amount in controversy requirement is met.

Plaintiff timely filed her Motion to Remand to State Court in which she challenges Celtic's assertion that Jordan and the Agency were fraudulently joined. Plaintiff further argues that Celtic's removal of this case to federal court was defective under 28 U.S.C. § 1446 in that

Celtic waited some eight months after the Complaint was filed to remove the case.

After carefully and thoroughly reviewing the parties' submissions and the applicable law, the court concludes that Plaintiff's Motion to Remand is due to be GRANTED.

### Remand Standard

■ Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1076 (11th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984). They may only hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673. A federal court has an independent obligation to review its authority to hear a case prior to proceeding to the merits of the case. *Mirage Resorts, Inc. v. Quiet Nacelle Corp.*, 206 F.3d 1398, 1400 (11th Cir.2000). The Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear. *See Burns*, 31 F.3d at 1095.

### Fraudulent Joinder Standard

■ A federal district court may exercise subject matter jurisdiction over a civil action in which only state law claims are alleged if the civil action arises under the federal court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). The diversity statute confers jurisdiction on the federal courts in civil actions "between citizens of different states," in which the jurisdictional amount is met. *Id.* To satisfy diversity, not only must a plaintiff be a citizen of a state other than the state of which one defendant is a citizen, but also, under the rule of "complete diversity," no plaintiff may share the same state citizenship with any defendant. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Because of the complete diversity requirement, a plaintiff may prevent removal simply by joining a defendant who shares the same state citizenship as the plaintiff. The filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal is called a "fraudulent joinder." Courts may disregard the citizenship of fraudulently joined defendants when assessing the existence of complete diversity. *See Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir.1979);[1] *Thomas v. Jim Walter Homes, Inc.*, 918 F.Supp. 1498, 1501 (M.D.Ala.1996).

■ The Eleventh Circuit applies a threefold test for determining whether a defendant has been fraudulently joined: the removing party must show either (1) that there is no possibility the plaintiff could establish a cause of action against the resident defendant in state court, (2) that the plaintiff fraudulently pleaded jurisdictional facts, or (3) that a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and the claim has no real connection to the claim against the nondiverse defendant. *See Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir.1998). If the removing party fails in an attempt to demonstrate the existence of a fraudulently joined party, then the case must be remanded to state court. *See Bolling v. Union Nat'l Life Ins. Co.*, 900 F.Supp. 400, 407 (M.D.Ala.1995).

■ The burden of proving fraudulent joinder rests with the Defendant as

---

1. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

the removing party. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997). A claim of fraudulent joinder must be supported by clear and convincing evidence. *See Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir.1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964); *see also Bolling*, 900 F.Supp. at 406. In evaluating whether there has been fraudulent joinder, all allegations and submissions must be viewed in the light most favorable to the plaintiff. *See Crowe*, 113 F.3d at 1538. In fact, "the district court should resolve all questions of fact and controlling law in favor of the plaintiff." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989).

### Alleged Facts

From the Complaint, the following facts are alleged. In April of 1999, Plaintiff and her mother spoke to Jordan, an insurance agent with the Agency, with the purpose of seeking short-term health insurance for Plaintiff. According to Plaintiff, Jordan made representations that the Celtic Short–Term Health Plan would provide coverage "for any occasion that she was in the hospital or needed medical treatment." Complaint, ¶ 11. Relying on Jordan's statements, Plaintiff completed a Celtic application and submitted the premium payment. Celtic issued Plaintiff the Short–Term Health Plan. The original plan was for six months, and, at the end of six months, Plaintiff allegedly renewed the policy for an additional six months.[2] Plaintiff's alleged renewal application was dated on September 30, 1999. Plaintiff made all of the necessary premium payments.

In December of 1999, Plaintiff learned that she needed an appendectomy. Plaintiff's treating physician allegedly contacted Celtic to obtain authorization for the procedure. According to Plaintiff, Celtic informed Plaintiff's physician that "the procedure did not have to be certified and that it was approved." Complaint, ¶ 14. Plaintiff chose a Doctor Carpenter to perform the surgery, and Plaintiff's mother allegedly contacted Jordan to determine if Carpenter was a physician approved by Celtic. Jordan informed Plaintiff's mother that while Carpenter was not currently a physician approved by Celtic, there would be no problems with Celtic's coverage of Plaintiff's surgery. Jordan allegedly advised Plaintiff's mother that Plaintiff's surgery could proceed at Lakeview Community Hospital and that the surgical bill would be paid.

Plaintiff underwent surgery on January 4, 2000. According to the Complaint, she "required extensive treatment and surgery at [the hospital] and was hospitalized for twenty-four hours." ¶ 14. Lakeview Community Hospital submitted the bills for Plaintiff's surgery to Celtic for payment. In the weeks after Plaintiff's surgery, however, Plaintiff began to receive bills from Lakeview Community Hospitals and her physicians. Plaintiff and her parents contacted both Jordan and Celtic about these bills, but Celtic refused to pay the surgical bills. On March 7, 2000, Plaintiff received a letter from Celtic denying coverage for Plaintiff's appendectomy.[3] On January 14, 2002, Plaintiff commenced this lawsuit.

---

**2.** Celtic challenges Plaintiff's contention that she renewed the policy in late September of 1999. According to Celtic, Plaintiff purchased a new six-month Short–Term Health Plan policy instead of renewing her original policy purchased in April of 1999.

**3.** Celtic challenges the factual allegations in Plaintiff's Complaint. The court does not need to engage in an exhaustive review of all of the substantive allegations and facts in dispute between the parties. As it will be explained, federal jurisdiction is not present in this case due to procedural failures in Celtic's removal of this case.

### Discussion and Analysis

#### Timely Removal by Celtic under 28 U.S.C. § 1446

Title 28, section 1446(b) of the United States Code states, in part, that:

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may be ascertained that the case is one which is or has become removable. . . .

Plaintiff originally filed this case on January 14, 2002. The parties took the depositions of Plaintiff, Plaintiff's mother, and Jordan on August 14, 2002. Celtic received the transcripts of these depositions on September 3, 2002. After reviewing these deposition transcripts, Celtic asserts that it learned, for the first time, that Jordan and the Agency allegedly were fraudulently joined. It thus filed its notice of removal on September 11, 2002, and claims that the filing was within the thirty day period running either from the date of the depositions or the date of receipt of the deposition transcripts.

Plaintiff challenges Celtic's removal of this case as being untimely. In particular, Plaintiff argues that the Complaint and information of which Celtic had knowledge provided a sufficient basis for the removal within thirty days of receiving the Complaint. In contrast, Celtic argues that the Complaint did not provide enough information for them to ascertain that the case was removable and that it did not know that the case could be removed on the basis of fraudulent joinder until it reviewed the depositions taken in August of 2002.

 Removal is a privilege accorded by statute, and a removing party must comply with the statutory requirements in order to invoke the statute. *Golden Apple*

*Mgmt. Co. v. GEAC Computers, Inc.,* 990 F.Supp. 1364, 1366 (M.D.Ala.1998) (Carroll, M.J.). The time limit in 28 U.S.C. § 1446(b) is "mandatory and must be strictly applied." *Jeffcoat v. Am. Gen. Life & Accident, Ins. Co.,* No. 01–D–325–N, 2001 WL 611196, *1, 2001 U.S. Dist. LEXIS 7256, at *4 (M.D.Ala. May 16, 2001) (citing *Webster v. Dow United Techs. Composite Prods., Inc.,* 925 F.Supp. 727, 729 (M.D.Ala.1996)). In *Webster,* this court explained that the "plain purpose of [the] language [of 28 U.S.C. § 1446(b) ] 'is to permit the removal period to begin only after the defendant is able to ascertain intelligently that the requisites of removability are present.'" 925 F.Supp. at 729 (quoting *First Nat'l Bank v. Johnson & Johnson,* 455 F.Supp. 361, 362 n. 2 (E.D.Ark.1978)); *see also Naef v. Masonite Corp.,* 923 F.Supp. 1504, 1511 (S.D.Ala. 1996) ("When the initial pleading fails to provide at least a clue that the action is removable . . . the thirty day time limit for notice of removal begins at the point when the defendant could have intelligently ascertained that the action was removable.") (citation omitted). Celtic, as the party bearing the burden of proving federal jurisdiction, also has the task of proving to the court exactly when the thirty day time limit of 28 U.S.C. § 1446(b) began to run. *See Morgan v. Estate of Cook,* 180 F.Supp.2d 1301, 1306 (M.D.Ala.2001); *Newman v. Spectrum Stores, Inc.,* 109 F.Supp.2d 1342, 1345 (M.D.Ala.2000) ("When a plaintiff questions the propriety of a defendant's removal petition, the defendant bears the burden of showing that the removal was proper.").

The court will thus review Celtic's arguments as well as the pleadings and depositions to determine when Celtic could have first intelligently ascertained that this case was removable. *See Webster,* 925 F.Supp. at 729 ("A defendant can 'intelligently ascertain' notice of the requisites of remova-

bility from either formal or informal 'papers,'....") (citation omitted). Celtic must also use any information it may be charged with under the law in determining when a case first becomes removable. In other words, Celtic cannot base the timing of its notice of removal on information allegedly obtained for the first time in a deposition when it legally possessed that information at an earlier date. *See, e.g., Golden Apple,* 990 F.Supp. at 1368 ("A defendant cannot forgo one recognized means of obtaining information related to jurisdiction for another and then argue that the manner in which the information was provided ... precludes imputing knowledge of the information to the defendant. Such manipulation would provide a windfall for the defendant which is clearly contravened by the removal statute's emphasis on effecting removal as soon as possible.") (citation omitted).

Celtic offers several reasons why it had to wait until receiving the transcripts from the depositions before it could intelligently ascertain that all four claims against Jordan and the Agency would fail. The court will briefly discuss the reasons that are applicable to each claim.

### 1. Fraudulent Misrepresentation

Celtic states that the misrepresentation claim against Jordan fails because "(1) there was no false representation, (2) it is precluded by Alabama law since the language of the policy contradicts Mr. Jordan's alleged misrepresentations, and (3) the claim is barred by the statute of limitations." Reply Brief, pp. 10–11. Celtic claims that it could not assert these arguments until it had evidence that Plaintiff had actually received and accepted a copy of the Celtic health insurance policy at issue in this case.

### 2. Negligence and/or Wantonness

Celtic argues that Plaintiff's negligence and/or wantoness claim against Jordan fails because Plaintiff failed to allege that Jordan had a duty to provide sufficient insurance coverage to pay the costs of her appendectomy. Celtic also contends that the claim is barred by the statute of limitations. According to Celtic, these arguments could not be made until it reviewed the depositions and determined that both Plaintiff and Plaintiff's mother stated that Jordan "properly obtained the Celtic policy for the Plaintiff." Reply Brief, p. 12.

### 3. Fraudulent Suppression

Celtic argues that Plaintiff's claim of fraudulent suppression against Jordan fails for two reasons. First, Jordan's deposition testimony revealed that he did not know the facts that were allegedly suppressed. Second, the information allegedly suppressed was contained in the Short–Term Health Plan policy booklet and application "which the Plaintiff admits signing and receiving." Reply Brief, p. 13. Celtic states that it could not make these arguments until it "received evidence of 1) Mr. Jordan's lack of knowledge of the facts allegedly suppressed, and 2) Plaintiff's receipt of the October 1999 policy booklet. Because there was no evidence regarding either issue prior to the August 2002 depositions, Celtic's removal period did not begin until this point." Reply Brief, p. 13. Celtic relies on *Sexton v. Liberty National Life Insurance Co.,* 405 So.2d 18, 22 (Ala.1981), and *Cunningham v. H.A.S., Inc.,* 74 F.Supp.2d 1157, 1165 (M.D.Ala.1999) (Carroll, M.J.), for the proposition that "a suppression claim will not lie where contemporaneous documents executed by the Plaintiff contradict the facts allegedly suppressed." Reply Brief, p. 14. According to Celtic, "until the August 2002 deposition of Plaintiff in which Celtic gathered evidence that Plaintiff received her insurance policy, Celtic could not intelligently ascertain that plaintiff's fraudulent suppression claim ... was without merit" on the grounds that the policy

booklet contradicts the facts allegedly suppressed. Reply Brief, p. 14.

#### 4. Negligent/Wanton Hiring, Training and/or Supervision

Celtic argues that Plaintiff's Negligent/Wanton Hiring, Training and/or Supervision claim against the Agency fails because all of Plaintiff's claims against Jordan fail. Celtic cites *Lane v. Central Bank of Alabama, N.A.*, 425 So.2d 1098, 1100 (Ala.1983), for the proposition that if a party's claims against an individual employee fail, then a claim against the employer for negligent hiring, training, and/or supervision will also fail. Celtic states that it could not raise this argument until it ascertained that Plaintiff's claims against Jordan failed, and it argues that it could not do this until it took and reviewed the depositions of Jordan, Plaintiff, and Plaintiff's mother.

In total, Celtic's principle argument on the timeliness of its removal is that it removed the case once it was able to intelligently ascertain that all four claims against Jordan and the Agency should fail. As soon as it became aware of the removability of the case, Celtic states, it removed the case to this court without delay. The counter-argument to Celtic's position is that if it knew or could intelligently ascertain that all four claims against Jordan and the Agency should fail at a time earlier than the date of the taking of the depositions in this case, the thirty day removal time limit began to run at that earlier time. If, for example, Celtic could have intelligently ascertained that all four claims against Jordan and the Agency should fail after receiving the Complaint, Celtic may not remove this case after thir-

ty days have passed. With that counter-argument in mind, the court will revisit each of Plaintiff's four claims against Jordan and the Agency to determine if and when Celtic could have first intelligently ascertained that all four claims should fail.[4]

#### 1. Fraudulent Misrepresentation

Celtic argues that Plaintiff's fraudulent misrepresentation claim against Jordan fails because, among other reasons, the claim is barred by the statute of limitations.[5] In support of this contention, Celtic cites *Foremost Insurance Co. v. Parham*, 693 So.2d 409, 421 (Ala.1997), and *Bullock v. United Benefits Insurance Co.*, 165 F.Supp.2d 1255, 1258 (M.D.Ala.2001), for the proposition that "it is well settled [in Alabama] that the statute of limitations for fraud begins to run when *'the plaintiff received documents* ... that if read or even briefly skimmed would have put reasonable persons on notice of [the facts constituting the fraud.]'" Reply Brief, p. 11 (emphasis in original) (quoting *Foremost* and *Bullock*). Celtic claims that it did not know conclusively that Plaintiff received her October 1999 policy which contained terms that allegedly would contradict alleged misrepresentations by Jordan until it deposed her in August of 2002.

Plaintiff does not deny that she received the October 1999 policy. In her deposition she testified as follows:

"Question: Plaintiff's Exhibit 9 is an envelope containing what might be referred to—I'd refer to it as a policy and policy provisions, but it's called a certificate booklet. Anytime between April 1st of 1999 and October 1st of 1999, did you [Plaintiff] ever receive a similar

---

**4.** The court does not reach the merits of all of Celtic's arguments for why Plaintiff's claims against Jordan and the Agency should fail. It is sufficient for this analysis that Celtic has asserted these arguments in the belief that they will succeed.

**5.** Alabama Code § 6–3–38(1) states that "[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."

such booklet, policy, or whatever we're going to refer to it as from Celtic Life?"

"Answer: No, sir."

"Question: You did receive Plaintiff's Exhibit Number 9, if I understand you correctly?"

"Answer: When?"

"Question: Well, you're right. Well you received Plaintiff's Exhibit Number 9?"

"Answer: Yes, sir."

"Question: And it's postmarked October the 11th of 1999. I take it you received it sometime shortly thereafter; is that correct?"

"Answer: Yes, sir, it is."

Deposition of Melodie Clingan, p. 16, lines 3–22. Plaintiff later testified further to her receipt of the health insurance policy:

"Question: But you did receive—And I can't remember what exhibit it is."

"Mr. Brittain: 9."

"Question: Plaintiff's Exhibit 9—a policy after the second application was signed?"

"Answer: That's correct"

"Question: And you obviously opened it and reviewed it. Did you read it when you got it?"

"Answer: Just—again, just glanced. Did not read it specifically."

Deposition of Melodie Clingan, p. 26, lines 9–20.

Plaintiff's testimony, albeit testimony that occurred in August of 2002, approximately eight months after the Complaint was filed, reveals several things that Celtic could have intelligently ascertained at the time it received the Complaint. First, the policy was mailed to Plaintiff. Celtic knew Plaintiff's address through her application form which she had signed and completed on September 30, 1999. *See* Evidentiary Submissions in Support of Defendant's No-

tice of Removal ("Submissions"), Doc. # 3, Exh. F. Celtic had access to the application form because the information contained in the application form is included in the policy booklet. *See* Submissions, Exh. G, pp. 20–21. Celtic has introduced no evidence that it failed to mail the policy to Plaintiff or that it lacks records or knowledge of a failure to mail the policy. Second, the policy booklet received by Plaintiff bears a Chicago, Illinois, postmark and a date of October 11, 1999. Chicago is Celtic's place of business. Consequently, Celtic had Plaintiff's address and should have known whether or not it sends policy booklets to its policy holders through the mail.

In this case, Celtic sent the policy booklet through the mail and had knowledge of this mailing in October of 1999. As Celtic has argued, the issue is whether Plaintiff actually received the policy. With knowledge of Plaintiff's address and the use of the mails, all of which Celtic could have intelligently ascertained at the time it received Plaintiff's Complaint, Alabama law provides the answer to the question of the receipt of mail.

In *Harrell v. Alabama Farm Bureau Mutual Casualty Insurance Co.,* 287 Ala. 259, 251 So.2d 220, 224–25 (1971), the Alabama Supreme Court stated that "[t]he presumption of the law is that a letter, properly addressed with sufficient postage, and unreturned to the sender whose address is shown on the envelope, was received by the addressee." [6] *See Ex parte Alfa Mut. Gen. Ins. Co.,* 742 So.2d 182, 186 (Ala.1999) ("*Harrell* also recognized the common-law rule that '[t]he presumption of the law is that a letter, properly addressed with sufficient postage, and unreturned to the sender whose address is shown on the envelope, was received by

---

**6.** Any issues regarding the sufficiency of the postage, the proper addresses for both Plaintiff and Celtic, and the question of whether the policy was returned to Celtic would all be matters within Celtic's knowledge at the time Plaintiff filed her Complaint.

the addressee.'"). The *Harrell* Court also noted that "[e]vidence tending to show that a letter was not received raises a question for the trier of fact as to whether the letter was mailed." 251 So.2d at 225 (citing *Corinth Bank & Trust Co. v. Cochran,* 219 Ala. 81, 121 So. 66 (1929)). Neither party has introduced any evidence that Plaintiff did not receive the policy booklet from Celtic. Celtic has not introduced any evidence that it did not have Plaintiff's proper address, that it failed to include sufficient postage on the policy booklet envelope, or that it failed to put its proper return address on the letter. Without such questions, Celtic did not need to wait until Plaintiff's deposition to determine whether or not Plaintiff actually received the policy booklet. The *Harrell* presumption would have allowed Celtic to intelligently ascertain that Plaintiff had received her policy, thus allowing Celtic to assert the defense of the statute of limitations within the thirty days following Celtic's receipt of the Complaint.

Interestingly, Celtic did assert the defense of the statute of limitations to Count IV of Plaintiff's Complaint in its Answer without waiting to learn from Plaintiff's deposition if she actually received the policy booklet. Count IV charges all of the Defendants—Celtic, Jordan, and the Agency—with fraudulent misrepresentation. *See*

Complaint, ¶¶ 40, 42–43. In its answer, Celtic states, as its fourth defense, "Plaintiff's claims against Defendant Celtic are barred by the applicable statute of limitations." Answer of Celtic, p. 10. Celtic did not limit this assertion to only those claims with which it had sufficient information to accurately assert the defense. Instead, the defense covered all claims, including the fraudulent misrepresentation claim. As noted above, Celtic claimed in its Reply Brief that it could not assert the defense of statute of limitations until it ascertained that Plaintiff had actually received the policy booklet. The consistency of these positions is not readily apparent.[7]

The court concludes that Celtic could have intelligently ascertained that Plaintiff received the policy booklet in October of 1999 and could have raised the statute of limitations argument within thirty days of receiving Plaintiff's Complaint.[8]

### 2. Negligence and/or Wantonness

Celtic admits in its Reply Brief that "upon receipt of the Complaint in this case, Celtic could have intelligently ascertained the statute of limitations defense asserted in its Notice of Removal" regarding Plaintiff's negligence and/or wantonness claim. Reply Brief, pp. 12–13. Accordingly, the court concludes that this argument could have been raised within thirty days of Celtic's receipt of Plaintiff's Complaint.[9]

---

7. Rule 11 of the Alabama Rules of Civil Procedure provides that "[t]he signature of an attorney constitutes a certificate by the attorney that the attorney has read the pleading, motion, or other paper; that to the best of the attorney's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay."

8. The court also notes that the introductory page of Celtic's Submissions, Doc. # 3, states that Exhibit G is "[a] copy of Celtic's Short-Term Health Plan and Certificate issued to Plaintiff in October 1999."

9. This case reveals an interesting conundrum in that if the question is whether Plaintiff

received the policy booklet, then the answer is known through Plaintiff's deposition testimony that she received the policy booklet. The court realizes that the operation of the *Harrell* presumption would require Celtic to act solely on the question without having the answer. With the knowledge that Plaintiff did, in fact, receive the booklet, requiring the operation of the presumption seems logical, especially since Celtic should have had all the information needed to determine if the prerequisites for the presumption were met. It is possible that Plaintiff could have denied receipt of the policy in an effort to defeat this court's jurisdiction by demonstrating that her claims against Jordan have merit because she did not

### 3. Fraudulent Suppression

Celtic argues that the text of Plaintiff's policy booklet specifically bars her claim for fraudulent suppression. Celtic states that "[i]t is black letter law in Alabama that a suppression claim will not lie where contemporaneous documents executed by the Plaintiff contradict the facts allegedly suppressed." Reply Brief, p. 14 (citing *Sexton,* 405 So.2d at 22, and *Cunningham,* 74 F.Supp.2d at 1165). Celtic asserts that since the facts allegedly suppressed by Jordan were contradicted by Celtic's policy booklet, Plaintiff's claim cannot succeed. Celtic also states that it could not raise this argument until it could intelligently ascertain that Plaintiff actually received the policy booklet.

As discussed above regarding Plaintiff's fraudulent misrepresentation claim, Plaintiff is presumed to have received the policy booklet after it was mailed from Celtic's Chicago office. Celtic has introduced no evidence that the prerequisites for the *Harrell* presumption were not met. See 251 So.2d at 224–25 (noting that prerequisites to operation of the presumption include a proper address, sufficient postage, a proper return address, and the lack of a return of the letter to the sender). Accordingly, Celtic could have raised this argument within thirty days of receiving the Complaint.

### 4. Negligent/Wanton Hiring, Training and /or Supervision

Celtic relies on *Lane* for the proposition that "[i]t is well settled in Alabama that where a party's claims against the individual employee fail, a claim for negligent hiring, training and/or supervision against their employer fails as well." Reply Brief, p. 14 (citing *Lane,* 425 So.2d at 1100). Celtic's principal argument on this claim is that it could not know that this claim

receive any documents that contradict the alleged misrepresentations. The presumption merely changes the timing of this argument, for Plaintiff could have raised it after her deposition was taken, if in her deposition, she denied receiving the policy. The timing does, however, affect whether Celtic would receive the benefit of other support for its fraudulent joinder arguments that it might discern from the depositions.

If the court does reach the arguments allegedly supplemented by the depositions, the court need look no further than Plaintiff's negligence and/or wantonness claim to determine that Plaintiff has stated a claim against Jordan for negligence and/or wantonness. This claim charges Jordan with negligently and/or wantonly failing to secure insurance coverage for Plaintiff's medical expenses. Celtic argues that: 1) Plaintiff failed to allege any facts showing that Jordan had a duty to provide insurance coverage, and 2) the alleged failure of the policy to provide insurance coverage is a question about the scope of the policy and not an issue of whether Jordan negligently and/or wantonly failed to obtain a policy for Plaintiff.

First, the court notes that any failure to allege facts showing that Jordan has a duty to provide insurance coverage for Plaintiff

Plaintiff should have been immediately apparent upon Celtic's receipt of the Complaint. Second, under *Palomar Insurance Corp. v. Guthrie,* 583 So.2d 1304, 1306 (Ala.1991), an insurance agent may voluntarily assume a duty to another person. With this Alabama Supreme Court precedent, the court is unable to conclude that there is no possibility that Plaintiff could establish a cause of action against Jordan for negligence and/or wantonness.

The court also notes that even if Jordan secured medical coverage for Plaintiff, Jordan could still face liability if he voluntarily assumed a duty to provide health insurance to cover all of Plaintiff's medical bills. Thus, while questions of the scope of the coverage that he did secure may exist, Jordan could face liability if the coverage he obtained did not meet the requirements of his voluntarily assumed duty. Accordingly, the court concludes that even if it considers evidence obtained from the depositions regarding Plaintiff's negligence and/or wantonness claim, the court cannot reach the decision that Plaintiff cannot establish this claim against Jordan, a nondiverse defendant.

against the Agency would fail until it knew that all of the claims against Jordan would fail. According to Celtic, it could not know this until it deposed Jordan, Plaintiff, and Plaintiff's mother in August of 2002.

As the foregoing analysis demonstrates, Celtic could have intelligently ascertained that Plaintiff's claims against Jordan either failed on the merits or were barred by the statute of limitations within thirty days of receiving the Complaint. Following Celtic's arguments, Celtic thus could have asserted within thirty days of receiving the Complaint the argument that Plaintiff's claim against the Agency would also fail. Instead, Celtic waited eight months to make this argument. Those eight months of waiting were sufficient to deprive this court of jurisdiction.

### Conclusion

The court concludes that Celtic could have intelligently ascertained within the thirty days following Celtic's receipt of the Complaint that it had valid arguments that all four claims against Jordan and the Agency should fail. With such knowledge, Celtic's thirty day window of opportunity to invoke federal jurisdiction on the basis of diversity and fraudulent joinder began running on January 17, 2002, when Celtic was served with the Complaint and summons. That thirty day window expired on February 17, 2002. Celtic failed to file its Notice of Removal until September 11, 2002, approximately eight months after receiving service. Celtic has not met the statutory requirement of 28 U.S.C. § 1446(b) to remove the case within thirty days of ascertaining the case's removability. Accordingly, this court is without jurisdiction to hear this case. Plaintiff's Motion to Remand is due to be and hereby is GRANTED.

A separate Order will be entered in accordance with this Memorandum Opinion.

### ORDER

In accordance with the Memorandum Opinion entered in on this day, it is hereby ORDERED as follows:

1. Plaintiff's Motion to Remand is GRANTED.

2. This case is REMANDED to the Circuit Court for Barbour County, Alabama.

3. The Clerk is DIRECTED to take appropriate steps to effect the remand.