Maria C. MENDEZ, et al., Plaintiffs,

v.

CENTRAL GARDEN & PET
COMPANY and Justin L.
Fail, Defendants.

Civil Action No. 03–T–703–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 31, 2003.

S. Mark Andrews, Morris Cary Andrews
& Talmadge LLC, Dothan, AL, for plain-
tiff.

Richard E. Broughton, Ball, Ball, Matthews & Novak, P.A., Montgomery, AL, for defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiffs Maria C. Mendez, Lucia M. Gomez, Mario Gomez, and Andrea de la Cruz Gomez brought this lawsuit against defendants Central Garden & Pet Company and Justin L. Fail, making claims of negligence, wantonness, willfulness, and recklessness arising out of an automobile accident. The plaintiffs initially brought suit on August 14, 2002, in the Circuit Court of Barbour County, Alabama. On July 2, 2003, the defendants removed this lawsuit to this court in reliance on 28 U.S.C.A. § 1446, claiming diversity-of-citizenship jurisdiction. This case is now before this court on the plaintiffs' motion to remand to state court on the grounds that the removal was untimely.[1] For the reasons that follow, this motion will be denied.

### I. Remand Standard

Federal courts are courts of limited jurisdiction. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir.1994). A federal court may only hear a case if it is authorized to do so by the United States Constitution or by Congress. See Kokkonen, 511 U.S. at 377, 114 S.Ct. 1673. A federal court may assert jurisdiction where the amount in controversy exceeds $ 75,000, exclusive of costs and interests, and the parties are citizens of different states. 28 U.S.C.A. § 1332(a). When an action is filed in state court, but the amount in controversy is sufficient and there is complete diversity, federal law gives the defendant the right to remove

the action to federal court. 28 U.S.C.A. § 1446.

■ Because removal raises significant federalism concerns, the removal statute must be strictly construed. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). All doubts about federal-court jurisdiction must be resolved in favor of a remand to state court. Burns, 31 F.3d at 1095. When a case is removed from state court, the burden is on the party who removed the action to prove federal-court jurisdiction. Id.

### II. Discussion

On October 11, 2001, an 18-wheeler driven by Fail and owned by Central Garden collided with a passenger van in which the plaintiffs were riding, in Eufaula, Barbour County, Alabama, close to the Alabama–Georgia border. The plaintiffs filed suit in an Alabama state court on August 14, 2002. All parties agree that complete diversity existed at the time the plaintiffs filed suit. Fail is a citizen of Georgia, and Central Garden is a citizen of California; the plaintiffs were all either citizens of Mexico or were aliens admitted to the United States for permanent residence who were domiciled in Eufaula, Alabama. 28 U.S.C.A. § 1332(a) (providing diversity jurisdiction for suits between citizens of a State and citizens or subjects of a foreign state, and stating that for the purpose of determining diversity jurisdiction, "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled").

However, the defendants did not remove this case to federal court until July 2, 2003. The plaintiffs allege that this removal was

---

1. Plaintiffs' motion to remand, filed Aug. 1, 2003 (Doc. No. 6).

untimely under 28 U.S.C.A. § 1446, which requires a petition for removal to be filed within 30 days after "receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

■ The crucial question is when the defendants received "paper" from which they could have "ascertained" that complete diversity existed, and thus that this case was removable. *Clingan v. Celtic Life Ins. Co.,* 244 F.Supp.2d 1298, 1302 (M.D.Ala.2003); *see also Naef v. Masonite Corp.,* 923 F.Supp. 1504, 1511 (S.D.Ala. 1996) ("When the initial pleading fails to provide at least a clue that the action is removable ... the thirty day time limit for notice of removal begins at the point when the defendant could have intelligently ascertained that the action was removable.") Removability can be ascertained from either formal or informal papers. *Clingan,* 244 F.Supp.2d at 1302 (citing *Webster v. Dow United Techs. Composite Prods., Inc.,* 925 F.Supp. 727, 729 (M.D.Ala.1996)).

Even though this motion was brought by the plaintiffs, the defendants must prove to the court "exactly when the thirty day time limit of 28 U.S.C. § 1446(b) began to run." *Clingan,* 244 F.Supp.2d at 1302. The defendant "cannot base the timing of its notice of removal on information allegedly obtained for the first time in a deposition when it legally possessed that information at an earlier date." *Id.* at 1303; *see also Golden Apple v. GEAC Computers, Inc.,* 990 F.Supp. 1364, 1368 (M.D.Ala. 1998).

The plaintiffs allege that the defendants were on notice that complete diversity existed "as early as January or February, 2003" based on medical records, employment records, and interrogatory responses that were in the defendants' possession.[2] The defendants counter that the discovery process was plagued by a great deal of confusion as to the plaintiffs' names, birth dates, and, most importantly, addresses, and that the June 9, 2003, depositions of the plaintiffs was the first time they were able to ascertain clearly the plaintiffs' State of citizenship, or domicile, at the time the complaint was filed. This court will scrutinize the pleadings and discovery materials in this case to determine at what point the defendants could have intelligently ascertained that complete diversity existed.

The complaint that was filed in this case does not provide addresses, States of citizenship or domicile, or immigration status for the plaintiffs.[3] The first information that the defendants received about the plaintiffs' addresses was in the accident report. In that report, the addresses of two of the plaintiffs, Maria Mendez and Mario Gomez, are listed as Forest Park, Georgia, while Andrea de la Cruz Gomez's address is listed as Tampa, Florida, and Lucia Gomez's address is Eufaula, Alabama.[4] Since defendant Fail is a citizen of Georgia, this information indicated that, assuming the plaintiffs' addresses were the same as their place of domicile, diversity did not exist. Of course, diversity would have existed if the plaintiffs were all citizens and subjects of a country other than the United States and were not admitted to the United States as permanent resi-

---

**2.** Plaintiffs' brief in support of motion to remand, filed Aug. 1, 2003 (Doc. No. 7), at 2.

**3.** Defendants' response, filed Aug. 15, 2003 (Doc. No. 9), attachment 2.

**4.** Defendants' response, attachment 1.

dents, but the defendants certainly could not have ascertained this at this stage.[5]

On January 31, 2003, the defendants received unsigned responses to their interrogatories, which they had sent in November 2002. These responses did not list addresses for any of the plaintiffs.[6] The responses did provide dates of birth and alternate names for two of the plaintiffs.[7]

In January or February 2003,[8] the defendants sent subpoenas to Charon Pok Phand, the employer of several of the plaintiffs, and to Flowers Hospital. In identifying the plaintiffs in these subpoenas, the defendants used names, addresses, and dates of birth for the plaintiffs that were different from those they had used in their January 23 subpoenas and from those in the plaintiffs' unsigned interrogatories.[9] The addresses defendants used here were in Florida and Alabama, both States which are completely diverse from those of the plaintiffs. No address at all was used to identify Mario Gomez. The

plaintiffs suggest that the defendants' use of this information means they had done independent investigation which had revealed that there was complete diversity.[10] However, these documents cannot be said to show that defendants were aware that diversity existed since they lacked any address for one of the plaintiffs. Because of this, it is not necessary for this court to address the question of whether the defendants could be said to be aware that diversity existed when in fact the majority of the addresses they used at this time were incorrect.[11]

Between January and March 2003, the defendants received medical and employment records from numerous sources. Records from Eufaula Fire and Rescue and Lakeview Hospital list the addresses of all the plaintiffs as 1512 140th Avenue, Apt. C, Tampa, Florida.[12] Medical records from Flowers Hospital list this Tampa address for Maria Mendez and Martha Mendez (another name for the plaintiff called

---

**5.** The fact that the plaintiffs did not speak English may have been a "clue" that they were probably not United States citizens, as a person who is not born in the United States or to United States citizens must pass a test of English proficiency in order to become a naturalized citizen. 8 U.S.C.A. § 1423. However, this would not tell the defendants whether or not the plaintiffs were admitted to the United States as permanent residents, which is also relevant to the diversity-jurisdiction statute, 28 U.S.C.A. § 1332(a).

**6.** Defendants' response, attachment 6.

**7.** *Id.* These responses provided the alternative names of "Maria Gomez" for Lucia Gomez, "Mauro Gomez–Mendez" for Mario Gomez, "Maria Gomez–Mendez" for Maria Mendez, and "Andrea Martha de la Cruz Gomez–Mendez" for Andrea de la Cruz Gomez.

**8.** The plaintiffs state that these subpoenas were served on January 24 and 27, 2003. Plaintiffs' brief at 6, 7. The defendants assert that they were served on February 24, 2003. Defendants' response at 6.

**9.** Defendants' response, attachment 7. For Andrea de la Cruz Gomez, Lucia Gomez, and Maria Mendez, the defendants used different dates of birth from those plaintiffs had provided in their unsigned interrogatory responses. For Maria Mendez, they used an address in Tampa, Florida instead of the Forest Park, Georgia address from the accident report. Additionally, these subpoenas use the names "Lucia Fautina" instead of Lucia Gomez and "Mauro Gomez" instead of Mario Gomez.

**10.** Plaintiffs' brief at 7. The plaintiffs gave the defendants unsigned copies of some medical records in January 2003; these names and addresses may have come from those records. *Id.* at 9.

**11.** These affidavits used addresses in Tampa, Florida for two of the plaintiffs, when in fact all of the plaintiffs lived in Eufaula, Alabama. Defendants' response, attachment 14.

**12.** Plaintiffs' brief at 5; Defendants' response, attachments 8–11.

Andrea de la Cruz Gomez in the complaint), and give two different addresses in Eufaula, Alabama for Maria Gomaz (named on the complaint as Lucia M. Gomez).[13] Medical records from Radiology Associates of Dothan list the Tampa address for Maria Mendez and the 560 Calhoun Road, Eufaula, Alabama address for Maria Gomaz (Lucia Gomez).[14] Medical records from Neurological Associates of Dothan give an address in Abbeville, Alabama for Martha Gomez (Andrea de la Cruz Gomez).[15]

Finally, employment records from Charon Pok Phand list Martha Mendez (Andrea de la Cruz Gomez), whose work alias is Paulina Gomez, as living in Eufaula, Alabama, and list Maria Mendez, whose work alias is Lucero Aguilar, as living in Abbeville, Alabama. The employment records also contain photocopies of Social Security cards and Resident Alien cards, also known as green cards,[16] for "Paulina Gomez" and "Lucero Aguilar."[17] It is unclear whether the other two plaintiffs also have green cards. The defendants state that the first time they tried to obtain employment records from Charon Pok Phand, they received four sets of records that turned out to be those of entirely different people from those of the plaintiffs here.

■ In sum, by March 2003, the defendants had received two or three different addresses for each plaintiff, all from unofficial documents.[18] While most of these addresses were in Alabama and Florida, and thus suggested that complete diversity might exist, they also included Georgia addresses which might have defeated diversity. There was information that at least two of the plaintiffs might be permanent residents of the United States, but since these documents used different

13. Plaintiffs' brief in support at 6 and attachment H; Defendants' response, attachments 8–11. The two addresses in Eufaula listed for Martha Gomaz are Ponderosa Trailer Park and 560 Calhoun Road.

14. Plaintiffs' brief, attachment H.

15. *Id.*

16. "Resident Alien card" is the old name for what is now officially called a "Permanent Resident card," and the common name of which is a "green card." *See* Reduction in the Number of Acceptable Documents and Other Changes to Employment Verification Requirements, 63 Fed.Reg. 6287–01 (1998).

17. Plaintiffs' brief, attachment I contains the employment records for these two persons. Neither the plaintiffs' nor the defendants' pleadings make it clear if the defendants received employment records for the other two plaintiffs, although the plaintiffs did subpoena those records and it appears that all of the plaintiffs worked at Charon Pok Phand at some point. While both parties seem to agree that Lucero Aguilar is the alias of Maria Mendez, *see* Plaintiffs' brief at 8 and Defendants'

response at 7, in the plaintiffs' attachment they actually label the Lucero Aguilar records as the employment records of Maria Gomez. This illustrates the confusion that exists in these records.

18. In summary: for Maria Mendez, there were addresses in Forest Park, Georgia (accident report), Tampa, Florida (Eufaula Rescue, Lakeview Hospital, Flowers Hospital, and Radiology Associates of Dothan), and Abbeville, Alabama (Charon Pok Phand, under the name Lucero Aguilar). For Lucia M. Gomez, there were addresses in Eufaula, Alabama (accident report, and Flowers Hospital and Radiology Associates of Dothan, under the name Maria Gomaz) and Tampa, Florida (Eufaula Rescue and Lakeview Hospital). For Mario Gomez, there were addresses in Forest Park, Georgia (accident report) and Tampa, Florida (Eufaula Rescue and Lakeview Hospital). For Andrea de la Cruz Gomez, there were addresses in Tampa, Florida (accident report, Eufaula Rescue, Lakeview Hospital, and Flowers Hospital under the name Martha Mendez), Abbeville, Alabama (Neurological Associates of Dothan, under the name Martha Mendez) and Eufaula, Alabama (Charon Pok Phand, under the name Paulina Gomez).

names from the names used by the plaintiffs in this suit, there was still a high degree of uncertainty as to the plaintiffs' immigration status.

██ The plaintiffs argue that the documents provided at least "clues" that complete diversity existed. It is true that when a document contains a "clue" as to the plaintiffs' citizenship, "the burden is on the defendant seeking removal to scrutinize the case and remove it in a timely fashion." *Kuhn v. Brunswick Corp.*, 871 F.Supp. 1444, 1446 (N.D.Ga.1994). However, if the documents the defendants received were clues, they were conflicting clues. Indeed, many of them were red herrings, as the plaintiffs actually lived nowhere but in Alabama since moving to the United States from Mexico.[19] The court finds that the defendants could not ascertain removability at this point, as they had received conflicting information, including Georgia addresses that, if they in fact reflected the plaintiffs' state of citizenship or domicile, would have defeated diversity.

██ On May 22, 2003, the defendants received signed interrogatory responses from three of the plaintiffs, which included addresses. This was six months after the interrogatory requests were first sent. All three of these plaintiffs listed their addresses as 126½ Washington Street, Eufaula, Alabama.[20] The fourth plaintiff, Lucia Gomez, did not provide interrogatory responses.[21] The plaintiffs argue that, after receiving these responses, the defendants were on notice that the case was removable because they knew that three of the plaintiffs were residents of Alabama, and had previously received information that the fourth also lived in Alabama.[22] The defendants respond that they could not

have known whether the Alabama addresses in the interrogatories were the plaintiffs' domiciles at the time the complaint was filed, and also that they still did not know the residence of Lucia Gomez.

In the ordinary case, the receipt of some address information is a sufficient "clue" to the State of domicile to begin the tolling of the 30–day period for removal. For instance, in *Kuhn v. Brunswick Corp.*, 871 F.Supp. 1444, 1446 (N.D.Ga.1994), the plaintiffs' complaint did not allege their citizenship, but the court found that the defendants could have intelligently ascertained that diversity existed since the automobile accident that was the subject of the lawsuit occurred in Michigan, the defendant was a Delaware corporation, and the plaintiffs filed suit in Georgia. Similarly, in *Kaneshiro v. North Am. Co. for Life and Health Ins.*, 496 F.Supp. 452, 462 (D.Haw.1980), a court held that where the plaintiff's initial pleading stated he was a resident of Hawaii, that allegation was a "clue" to his Hawaiian citizenship such that it started the 30–day period for removal.

However, this is not an ordinary case. The defendants received conflicting information about the plaintiffs' addresses over a period of several months, and none of those addresses was 126½ Washington Street in Eufaula. Therefore, it was reasonable for the defendants to think that the plaintiffs might have moved to that address recently, and might have been domiciled in another, non-diverse State at the time the complaint was filed. For that reason, the interrogatory responses were not enough to put the defendants on notice that diversity existed at the time the complaint was filed.

---

**19.** Defendants' response, attachment 14.

**20.** *Id.*, attachment 13.

**21.** Ms. Gomez returned to Mexico at some point in these proceedings.

**22.** Plaintiffs' brief at 10.

Further, even if the interrogatory responses were an adequate "clue" as to the residences of the three plaintiffs who responded to them, there was no response from the fourth plaintiff, Lucia Gomez. As explained above, the defendants had received two addresses for Ms. Gomez—Tampa, Florida and Eufaula, Alabama. There was nothing to indicate which (if either) of these addresses was correct at the time the complaint was filed. The plaintiffs argue that since either an Alabama or a Florida address would create complete diversity, the defendants were on notice that complete diversity existed. However, under the statute a defendant seeking removal must include a "short and plain statement of the grounds for removal." 28 U.S.C.A. § 1446(a). This statement includes the address of each party. *Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 206 (2nd Cir.2001). It is questionable whether a statement that one plaintiff probably lived in either Florida or Alabama at the time the complaint was filed would suffice.

In essence, if the defendants had attempted to remove after receiving the signed interrogatory responses, they would have been merely guessing about removability. Many courts have held that defendants should not be required to "guess" in this way, and that the 30–day period should not begin to run until the defendant should objectively know that the case is removable. In *Webb v. Home Depot, USA, Inc.,* 2000 WL 351992 (M.D.Ala. March 27, 2000), the court held that removal was timely when the complaint did not allege the amount in controversy and the defendant did not remove until it received discovery responses which made it clear that the plaintiff was seeking more than $75,000. The court explained that the "problem presented in this case is one of the Plaintiff's making, not of the Defendant's," and stated that "[b]ased on the ambiguous nature of the Complaint, [the defendant] should not be penalized for concluding that it could not remove this action in good faith without further inquiry." *Id.* at *3 (citing *Robinson v. GE Capital Mortgage Services, Inc.,* 945 F.Supp. 1516 (M.D.Ala.1996)).

In *Rowe v. Marder,* 750 F.Supp. 718 (W.D.Pa.1990), *aff'd,* 935 F.2d 1282 (3d Cir.1991), the court stated that the 30–day period did not begin to run until the defendant could "ascertain easily the necessary facts to support his removal petition." The court reasoned that "[t]o allow a document with less information to satisfy the statute would require the movant to 'guess' as to an action's removability, thus encouraging premature, and often unwarranted, removal requests." *Rowe,* 750 F.Supp. at 720; *see also Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 205–6 (2nd Cir.2001) (holding that summons with notice which provided incomplete address information did not allow the defendant to "intelligently ascertain" removability); *In re Willis,* 228 F.3d 896, 897 (8th Cir.2000) (per curiam) (holding that 30–day period begins to run only when complaint explicitly discloses that the amount in controversy exceeds the federal jurisdictional amount); *Chapman v. Powermatic, Inc.,* 969 F.2d 160, 163 (5th Cir.1992) (same; "[T]his rule promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know").

As in these cases, the defendants here did not drag their feet or unnecessarily delay removal, but rather attempted to determine whether the case was removable through the discovery process, and removed the case as soon as they determined that complete diversity existed. Indeed, if the defendants had attempted to remove earlier, they would have put themselves at serious risk for Fed.R.Civ.P. 11 sanctions.

The first date upon which the defendants had enough information to "ascertain" that this case was removable was thus June 9, 2003, when they deposed three of the plaintiffs and learned that. all of the plaintiffs had lived only in Eufaula, Alabama since moving to the United States.[23] The removal on July 2, 2003, was therefore within the statutory 30–day period.

For the reasons discussed, it is ORDERED that the plaintiffs' motion to remand, filed August 1, 2003 (Doc. No. 6), is denied.

---

23. Defendants' response, attachment 14.