SUAREZ, J.
Appellant/Cross-Appellee Bengal Motor Company, d/b/a Maroone Honda (“Ma-roone”) appeals from a final summary judgment in favor of Appellee/Cross-Ap-pellant Michelle Cuello (“Cuello”) on count two of Cuello’s First Amended Complaint, while Cuello cross-appeals from the final summary judgment in Maroone’s favor on counts one, three, four and five of the First Amended Complaint. Our standard of review on final summary judgment is de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). We affirm, on Cuello’s cross-appeal, the trial court’s grant of final summary judgment in favor of Maroone on counts one, three and four of the Complaint.[1] We address only the issue raised in count two of Cuello’s First Amended Complaint and presented on Maroone’s appeal from final summary judgment. On this issue, we affirm that part of the final judgment, limited to the specific facts of this case, finding that Maroone’s use of conditional language in its Bailment Agreement and Retail Buyers Order violated the “finality” requirement of the Truth in Lending Act (“TILA”)[2], as applied to its separate offer of credit terms, and was thus, as a matter of law, a violation of the Florida Motor Vehicle Retail Sales Finance Act (“FMVRSFA”).[3] We reverse, however, that part of the final summary judgment granting monetary damages to Cuello as a result of that violation.
Cuello sought to buy a car from Ma-roone. She signed three documents at the dealership: 1) the Retail Buyer’s Order (“RBO”), which states that on a credit transaction the purchaser’s offer is not accepted until approved by the dealer and a bank or finance company, that Maroone retains title until all funds owed are paid, and if financing is not approved, Maroone can terminate the agreement at its option; 2) the Retail Sales Installment Contract (“RISC”), subject to TILA, and which contains financing terms to be submitted to the financing company for approval; and *60 3) the Bailment Agreement for Spot Delivery, which allowed Cuello to drive the vehicle off the dealer’s lot that same day. The Bailment Agreement states that the car remains dealer property pending financing approval and provides that, if financing is not approved, the purchaser may either sign a new RISC agreement with new finance terms or return the vehicle. The Bailment Agreement also states that it is attached to and forms part of the sales agreement. The RBO indirectly references the other documents.
After signing all three documents, the dealership allowed Cuello to leave with the car that day (a practice widely referred to as “spot delivery”). Subsequently, Cuello was not approved for financing at the terms recited in the RISC. The dealership notified her that she could sign a second RISC with different financing terms and a higher annual percentage rate, or she could return the vehicle to the dealership. Cuello did neither, and Ma-roone repossessed the vehicle.
Cuello sued Maroone, alleging 1) damages for common law fraud in the inducement; 2) damages for violation of the FMVRSFA; 3) damages for violation of the Florida Deceptive and Unfair Trade Practices Act (“FDUTPA”);[4] 4) injunctive and declaratory relief under FDUTPA; and, 5) damages for wrongful repossession.[5] The trial court granted summary judgment in Maroone’s favor on all five of Cuello’s claims. On motion for rehearing, however, the trial court allowed Cuello to re-plead count two under FMVRSFA in light of preemptive TILA requirements.[6],[7]
The case was then reassigned to a different circuit court judge, who heard arguments on both parties’ motions for summary judgment based solely on the allegations in count two of the Second Amended Complaint. The trial court held that, as a matter of law, the conditional language contained in the Buyer’s Order and Bailment Agreement negated the finality requirement in TILA for the financial disclosures made in the RISC, constituting a TILA violation and, consequently, a per se violation of FMVRSFA. Although Cuello incurred no actual monetary damages, the trial court granted to Cuello the amount of finance fees authorized by section 520.212(2) charged by reason of Maroone’s “violation.”
Although Maroone provided in the RISC all TILA disclosures required by federal law, the trial court’s concern was that the RISC did not refer to or mirror the conditional language of the RBO and Bailment Agreement, i.e., that absent from the RISC was language notifying the buyer that the consummation of the deal was contingent on the buyer being approved for third-party financing at the rates disclosed in the RISC. Cuello argued, and the trial court agreed, that the conditional language of the other two documents compromised the “finality” of the RISC agreement pursuant to TILA, thus it was not a “final” statement of the deal under TILA and the consumer was thus not contractually obligated. Such a lack of finality under TILA, Cuello argued, is a per se violation of the Florida FMVRSFA statute. We agree.
*61 Regulation Z of TILA requires that the creditor disclose the identity of the creditor, the amount being financed, the annual percentage rate, the total sale price, and the total amount of payment. 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18. These disclosures must be made “before credit is extended,” see 12 C.F.R. § 226.17(b); see also 15 U.S.C. § 1638(b)(1), a point known as “consummation.” “Consummation” refers to the time that a consumer becomes contractually obligated on a credit transaction. 12 C.F.R. § 226.2(a)(13). Regulation Z also provides that, when determining the point at which a consumer becomes contractually obligated to a credit agreement, state law should govern. See 12 C.F.R. § 226, Official Staff Commentary 2(a)(13). However, although state law is determinative of when a contractual relationship is created it has nothing whatsoever to do with how the transaction is to be characterized for TILA purposes; that question is governed by federal law. And the federal courts have held that TILA’s disclosure requirements become effective at the point in the transaction at which the buyer signs a credit agreement and becomes obligated to pay on it, regardless of the level of the creditor’s commitment. Bragg v. Bill Heard Chevrolet, Inc., 374 F.3d 1060, 1066 (11th Cir.2004).
Here, two of the three documents that Cuello signed, the Buyer’s Order and the Bailment Agreement for spot delivery, were unambiguous that the sale transaction was contingent upon her securing financing at the rates provided in the RISC. It is true that when parties execute two or more documents concurrently in the course of one transaction concerning the same subject matter, the documents must be read and construed together; and where one or more provisions of a contract conflict, “they should be construed so as to be reconciled, if possible.” Dodge City, Inc. v. Byrne, 693 So.2d 1033, 1035 (Fla. 2d DCA 1997). But in this particular case, the RISC did not contain any of the language of contingency, nor did it reference the other two documents. See Hunter v. Bev Smith Ford, LLC, 2008 WL 1925265, *1 at *5 (S.D.Fla. Apr.29, 2008), which states,
Section 520.07 [FMVRSFA] does not expressly or implicitly prohibit financing contingencies. Since the statute directly links this legislation to TILA, the principles of law established for interpreting TILA should instruct the interpretation of FMVRSFA. Since courts in this district have already held that conditions precedent that are conspicuously stated in the RISC do not violate TILA, the same should be true for FMVRSFA.
The RISC in Hunter also contained language notifying the buyer that, “[t]his Lease and/or Retail Installment Sales Contract is conditioned pending financial institution (Bank, Sales Finance Company, Credit Union, etc.) funding. This selling motor vehicle dealership DOES NOT LEND MONEY OR ACCEPT MONTHLY PAYMENTS.” Hunter, 2008 WL 1925265 at *3. The Hunter court concluded that
[m]ultiple courts in this district have held that consummation occurs upon the purchaser’s signature of the RISC or sales contract. See, Bragg at 1066-68; Muro v. Hermanos Auto Wholesalers, Inc., 514 F.Supp.2d 1343, 1349-50 (S.D.Fla.2007); Cannon v. Metro Ford, Inc., 242 F.Supp.2d 1322, 1329-30. Each of those cases, however, is distinguishable because, here, defendant specifically stated in the RISC that the consummation of the contract was conditional upon third party financing. Specifically including such a disclaimer is critical and fundamentally changes the point when consummation occurs *62 from the moment the customer signs the RISC to the point where the third party accepts the terms of the financing agreement. As the Muro court explained:
CQt bears emphasizing that this decision does not prevent car dealers like Defendant from conditioning car sales on the later acceptance of a potential buyer’s credit. “If Defendant wants to engage in such a conditional credit agreement in the future, however, it must, as it could have here, clearly indicate that fact in the credit agreement documents.”
Muro at 1350; see also, Bragg at 1067 (“no condition precedent set forth in the RISCs themselves”); Cannon at 1330 (“RISC was not made contingent upon plaintiffs’ obtaining financing”). Thus, the parties entered into a conditional contract, which is permitted by law. Since the condition precedent never occurred, the contract was never consummated and defendant could not have violated TILA.
Hunter, 2008 WL 1925265 at *3, *4 (emphasis added). In Cuello’s case, the TILA disclosures in the RISC were made before credit was extended by the third-party lender, but the RISC did not contain any language notifying Cuello that the deal was contingent on securing financing. Thus, the federal cases on this narrow TILA issue indicate that the sale was consummated when Cuello signed the RISC, not when a third party lender approved financing (or not) at the stated rates. The language of contingency set forth in the RBO and Bailment Agreement, not mirrored in the RISC, negated the TILA requirement of finality. We agree with the trial court’s conclusion that this results in a TILA violation, and, thus, a per se violation of FMVRSFA.[8]
We disagree, however, with the trial court’s award of damages to Cuello based on section 520.12(2), as she did not suffer any actual damages as a result of Maroone’s conduct. Section 520.12(2), Florida Statutes (2011), states:
(2) In the case of a willful violation of this part with respect to any retail installment sale, the buyer may recover from the person committing such violation, or may set off or counterclaim in any action against the buyer by such person, an amount equal to any finance charge and any fees charged to the buyer by reason of delinquency, plus attorney’s fees and costs incurred by the buyer to assert rights under this part.
§ 520.12(2), Fla. Stat. (2011) (emphasis added).
Regardless of whether Maroone’s conduct was willful, the court erred in awarding Cuello damages because, unlike TILA’s penalty provisions,[9] which allow a party to collect damages for technical violations of that statute even when no actual damages have been incurred, Chapter 520 does not contain such a penalty provision. Indeed, the record reflects that Cuello did not seek damages under TILA. Cuello paid no finance charges and no fees were charged to her pursuant to that statute by reason of the delinquency.[10] Because Cuel- *63 lo suffered no compensable damages under Chapter 520, Maroone was entitled to summary judgment on this issue. We therefore reverse that portion of the final judgment awarding damages to Cuello and remand for proceedings consistent with this opinion.
Affirmed in part, and reversed in part.

.Cuello does not appeal from the summary judgment in favor of Maroone on count five of the Complaint.

. 15 U.S.C. 1601 etseq.

. Ch. 520, Fla. Stat. (2011).

. Chapter 501, Fla. Stat. (2011).

. Chapter 679, Fla. Stat. (2011).

. See 15 U.S.C. 1601, etseq.

. The trial court's order granting rehearing and accepting Cuello’s Second Amended Complaint reiterated its dismissal of Counts 1, 3, 4, and 5, and specifically stated that it was limited to hearing only Count 2, alleging a cause of action under FMVRSFA based on alleged failure to comply with TILA and Regulation Z.

.We limit our holding to the specific facts of this case, which might well have resulted in a different outcome had the RISC included language specifically indicating that the consummation of the contract was conditional upon third party financing. See, e.g., Muro v. Hermanos Auto Wholesalers, Inc., 514 F.Supp.2d 1343, 1349 (S.D.Fla.2007) ("[T]his decision does not prevent car dealers ... from conditioning car sales on the later acceptance of a potential buyer’s credit.... [HJowever, it must ... clearly indicate that fact in the credit agreement documents.”).

. See 15 U.S.C. § 1640.

. See, e.g., Chastain v. N.S.S. Acquisition Corp., 2009 WL 1971621 (S.D.Fla. Jul. 8, 2009) (holding that where plaintiff alleged no *63 cognizable damages under chapter 520, FMVRSFA, dismissal was appropriate and no damages could be awarded); Jones v. TT of Longwood, Inc., 2007 WL 2298020 (M.D.Fla. Aug.7, 2007) (finding no damages under FMVRSFA because the buyer was never charged any fees or finance charges by the dealer).